A08A0822. KENT v. THE STATE.
(668 SE2d 442)

JOHNSON, Presiding Judge.

A jury found Ronnie Kent guilty of rape and burglary. Kent appeals, alleging the trial court erred in admitting similar transac-

tion evidence, the trial court improperly induced sympathy for the victim and bolstered the victim's credibility, and the verdict was not supported by sufficient evidence. We find no error and affirm Kent's convictions.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in this light, the evidence shows that on July 27, 2004, the 27-year-old victim called her mother and told her she had been raped. The mother drove to the victim's apartment and found her crying beside the kitchen table. The victim kept repeating, "Mommy, I got raped." The mother observed blood all over the victim's bed, on the bathroom floor, and in the toilet. The victim told her mother that the rapist had walked her home, made her lunch, left, came back, and raped her.

After the mother called 911, an officer who knew the victim arrived at the apartment. According to the officer, the victim reminded him of a five-year-old child, and she was always in a wheelchair carrying a baby doll in her lap. The officer had never seen the victim so upset. The victim complained that her stomach hurt, so the officer and the mother took her to the hospital, where the victim told a doctor and emergency room nurses that she was raped. The doctor observed dried blood on the victim's legs and vaginal area, bruising between the victim's rectum and vagina, blood in the opening of her urethra, and abrasions in both her vaginal wall and rectal area. The doctor opined that the bruises and abrasions were consistent with nonconsensual and forced sexual intercourse within the past few hours.

The victim is mentally retarded, having the mental age of a ten-year-old, and has been declared an incapacitated adult. Due to cerebral palsy, she lacks coordination and has difficulty speaking. She is able to feed herself, but quite sloppily. During high school, the victim was taught daily living skills since academics were beyond her abilities. At the time of the incident, the victim was living in an

---

[1] *Dumas v. State*, 239 Ga. App. 210, 210-211 (1) (521 SE2d 108) (1999).

[2] (Citation omitted.) *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).

[3] *Watley v. State*, 281 Ga. App. 244, 248 (4) (635 SE2d 857) (2006).

apartment complex near her mother. An aide came to the apartment in the morning to dress the victim, prepared breakfast for the victim, left the victim lunch, and returned in the evening for light house work and to get the victim showered and dressed for bed. The victim enjoys playing "Barbies" with the young girls in the apartment complex, likes to color, and watches Disney movies with the children in the evenings.

A detective searched the victim's apartment and interviewed the victim. The victim told the detective that she was on her way home from a clinic when a utility truck across the sidewalk blocked her wheelchair from moving. A man later identified as Kent asked the workers to move the truck, began talking to the victim, and walked her home. A friend from the clinic observed Kent walking and talking with the victim. Kent came into the victim's apartment, made her tea and lunch, and then left. Later, Kent let himself back into the apartment, wheeled the victim to her bed, undressed the victim, and raped her. He then took her to the bathroom, re-dressed her, and left her in the wheelchair. The victim was not able to describe her assailant to the detective, but the clinic employee and another friend who saw the victim with Kent worked with a forensic artist to prepare a sketch. Another witness identified Kent as the person in the sketch, and the detective questioned Kent.

At first, Kent failed to mention meeting the victim, but when the detective confronted him further, Kent admitted he had met the victim and escorted her home. Kent initially insisted he left the victim immediately after escorting her home, but later admitted he entered the victim's apartment and made her lunch. According to Kent, he asked the victim if she had ever had sex, and she told him she had not and then asked him to have sex with her. The victim denied any talk about sex and stated she was afraid of Kent. She told Kent to stop, but he was too strong. The victim described the incident and told the jury Kent pulled her to him and stuck his penis inside her. Despite the victim's protests, she testified that Kent "kept right on going."

1. Kent contends the trial court erred in admitting similar transaction evidence. Two years prior to the incident, another detective investigated Kent for offenses against eight and eleven-year-old girls at another apartment complex. Kent at first denied ever hearing of the young girls, but later admitted knowing them. Eventually, Kent admitted that he engaged in a sexual conversation with the girls that began at the apartment complex pool and continued onto the playground and into a wooded area nearby. Kent further admitted that during a sexual truth-or-dare game, the eleven-year-old removed her bra in compliance with a dare. Kent kept the girl's bra and told the detective he had removed his pants

and exposed his buttocks. Kent was placed under arrest for one count of child molestation, and the United States military took the case since Kent was in the Army at the time. Kent pled guilty to one count of taking indecent liberties with a female under 16 by daring her to kiss him and to remove her bra with the intent to arouse his sexual desires, and one count of taking indecent liberties with a female under 16 by dropping his pants and exposing his buttocks with the intent to gratify his sexual desires.

Kent argues that this evidence should not have been admitted because (1) the existence of the prior transaction was established solely through hearsay and was improperly documented, (2) the transaction was not sufficiently similar to the crimes being prosecuted in this case, and (3) the prejudice against Kent significantly outweighed the probative value of the evidence. We find no error.

The record shows that the trial court held a lengthy hearing on the admissibility issue prior to trial pursuant to Uniform Superior Court Rule 31.3. Following the hearing, the trial court ruled the evidence admissible to show Kent's lustful disposition toward persons of limited mental capacity. As for Kent's hearsay argument, the record shows that the detective who investigated and arrested Kent for the prior offenses testified at trial regarding his investigation and what Kent told him during the investigation. This Court, as well as the Supreme Court of Georgia, has previously ruled that what an investigating officer saw while investigating a prior offense and what the defendant told him during that investigation is not hearsay and is admissible at trial.[4]

Kent further argues that the state failed to introduce a certified copy of his conviction for taking indecent liberties. However, the record shows that the trial court ruled that the state tendered a properly certified copy of Kent's court martial conviction and granted the state's request to introduce the documents into evidence. These documents clearly show the charges to which Kent pled guilty. Given the liberal admission of similar transaction evidence in cases involving sex crimes against children, the trial court did not err in allowing the state to introduce the certified copies of Kent's court martial adjudication.[5]

We also find no merit to Kent's argument that his prior conviction was not sufficiently similar to the rape in the present case. The trial court correctly found that the sexual offenses against the 11-year-old demonstrated Kent's tendency to sexually assault indi-

---

[4] See *Inman v. State*, 281 Ga. 67, 70 (3) (a), n. 6 (635 SE2d 125) (2006); *Terry v. State*, 262 Ga. App. 654, 655 (586 SE2d 357) (2003).

[5] See generally *Lee v. State*, 241 Ga. App. 182, 183 (2) (525 SE2d 426) (1999).

viduals of limited mental capacity.[6] And, contrary to Kent's argument, the relevancy of this similar transaction evidence outweighed any prejudice that its admission may have occasioned. "Such evidence is particularly relevant and needed[ ] where the victim of [the] sexual abuse is mentally retarded."[7]

2. Kent asserts the trial court improperly induced sympathy for the victim and bolstered her credibility. He complains of two separate colloquies, one before the victim testified and one after the victim testified, as well as comments made by the court during the defense's cross-examination of the victim. Before the victim testified the following colloquy took place:

> Court: Hey, [victim's name], how are you doing?
> Victim: Good.
> Court: You remember me. I'm Judge Russell, from the other day?
> Victim: Yes.
> Court: Good to see you again. [Mother's name], you can sit by her. Ladies and Gentlemen, it's unusual to have someone else sitting by somebody during [sic] the witness stand, and I'm allowing it in this case because of the relationship of [victim's name] mother and [victim's name] and just the anxiety she may be suffering from testifying. That's my decision to do that.

During cross-examination, the court interrupted on a few occasions, making comments such as "Answer his questions, [victim's name]" and "[victim's name], try to answer his questions. He's almost through." After the victim's testimony, the Court stated, "[Victim's name], sort of move around in your chair a little bit and look at me again. That's good, [victim's name]. Here I am right here. [Victim's name], I just want to tell you I thought you did a great job too. And you're free to leave the courtroom now. Thank you very much."

Kent argues that the trial court's solicitous attitude and comments reinforced the state's position that the victim was physically and mentally infirm, like a child. Kent further argues that the court's attitude and statements also suggested to the jury that the witness was, indeed, a victim in the case, thereby bolstering her credibility. However, since Kent did not object to the comments at trial or request a mistrial because of the comments, he is entitled to a new trial only if the trial court's comments "seriously affected the

---

[6] *Dumas*, supra at 215 (3).
[7] (Citation and punctuation omitted.) Id.

fairness, integrity, and public reputation of these judicial proceedings."[8] Because we find that the trial comments did not seriously affect any aspect of the trial, this enumeration of error is without merit.

OCGA § 17-8-57 forbids a trial judge from "express[ing] or intimat[ing] his opinion as to what has or has not been proved or as to the guilt of the accused." In his appellate brief, Kent does not cite a single citation of authority supporting his arguments. And we have found no cases supporting his contention that the court's comments in this case bolstered the victim's credibility or somehow affected the fairness and integrity of the trial. Moreover, the court explicitly instructed the jury that none of its rulings or comments should be interpreted to express any opinion upon the facts of this case, upon the credibility of witnesses, upon the evidence, or upon Kent's guilt or innocence. The comments complained of did not seriously affect the fairness, integrity, or public reputation of the proceedings and did not constitute reversible error.[9]

3. In his final enumeration of error, Kent contends the evidence was insufficient to support the jury's verdict. However, the testimony of a single witness is generally sufficient to establish a fact.[10] And any conflicts or inconsistencies in the evidence are for the jury to resolve.[11] In this case, the jury was authorized to find that the victim was credible and accept her testimony over Kent's testimony. Moreover, the victim's testimony was corroborated by eyewitnesses who saw Kent with the victim, blood at the scene, and wounds to the victim's vagina. And Kent's prior offenses and eventual admissions after initially claiming that he barely knew the victim could also be considered by the jury. Such evidence was sufficient for the jury to find Kent guilty beyond a reasonable doubt of the crimes charged.

*Judgment affirmed. Barnes, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 16, 2008 —

Rape, etc. Liberty Superior Court. Before Judge Russell.
*Craig T. Pearson*, for appellant.

---

[8] (Citations and punctuation omitted.) *Bolden v. State*, 281 Ga. App. 258, 259 (2) (636 SE2d 29) (2006).

[9] See id. at 259-260 (2).

[10] OCGA § 24-4-8.

[11] See *Watley*, supra at 248 (4).

*Tom Durden, District Attorney, Henry P. Smith, Assistant District Attorney*, for appellee.