A12A0075. WILLIAMSON v. THE STATE.
(727 SE2d 211)

ELLINGTON, Chief Judge.

A Walker County jury found Jamie Williamson guilty beyond a reasonable doubt of two counts of rape, OCGA § 16-6-1 (a) (1); two counts of statutory rape, OCGA § 16-6-3 (a); one count of aggravated sexual battery, OCGA § 16-6-22.2 (b); three counts of aggravated sodomy, OCGA § 16-6-2 (a) (2); eight counts of child molestation, OCGA § 16-6-4 (a) (1); and two counts of aggravated child molesta-tion, OCGA § 16-6-4 (c).[1] He appeals from the denial of his motion for new trial, contending that the trial court erred in denying his motion

---

[1] The trial court conducted a joint trial on two indictments, each of which charged Williamson with committing numerous crimes against a single victim. Some of the convictions merged with others prior to sentencing.

for a mistrial and that the evidence was insufficient to support his convictions. Finding no error, we affirm.

1. Williamson contends that the evidence was insufficient to support his convictions, arguing that the victims' testimony was not corroborated by other evidence, that their testimony was inconsistent with their previous statements and with the testimony of other witnesses, and that the State failed to present any physical evidence to prove that he committed the crimes.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

This case involves acts committed by Williamson against two girls, L. P. and B. E. For about a year in 2004 and 2005, when L. P. was eight to nine years old, she lived with her mother, her brothers, and a few other people, including Williamson and his wife, in a home in Walker County. According to L. P., during that period, Williamson repeatedly took off her clothes and touched her genital and anal areas with his hands and his penis. Williamson also forced L. P. to put her mouth on his penis. Williamson warned L. P. not to tell anyone about what he did, telling her that, if she did, he would go away for a long time. All of the acts took place in the home L. P.'s family shared with Williamson and the others. L. P. eventually told her best friend about the abuse, with the hope that the friend would tell someone who could help; the friend testified at trial about L. P.'s outcry and the change in L. P.'s demeanor when she talked about the abuse. The friend then told her mother, who told L. P.'s grandmother, and, ultimately, the police and the Department of Human Services, Division of Family and Children Services ("the Department") were notified. A forensic interview with L. P. was conducted, and a recording of the interview was played for the jury at trial. In addition, a sexual assault medical exam was performed on L. P., but the examiner found no evidence of any physical injuries. Williamson was arrested and charged with numerous sexual offenses, but he was released on bond in July 2005.

Two years later, in late 2007 and early 2008, the second victim, B. E., who was 12 to 13 years old at the time, and her younger sister went to Williamson's home a few times to visit his wife, who was their great aunt. According to B. E., while she was visiting the home during that period, Williamson kissed her on the neck and twice had sexual intercourse with her and sodomized her. On one occasion, Williamson warned B. E. that, if she told anyone about what he did, she would never see her aunt or cousins again. Even so, B. E. told her sister, one of her other great aunts, and others about the abuse in early 2008. At trial, B. E.'s sister testified that, during one of their visits to Williamson's home, she had seen B. E. and Williamson go into his bedroom together; she and their great aunt also testified about B. E.'s statements to them about the assaults. According to B. E.'s great aunt, after she learned of the abuse, she took B. E. to the hospital for a sexual assault medical exam, and the police were contacted. According to the sexual assault nurse who conducted the exam, there were two tears in B. E.'s hymen that were the result of blunt force trauma, meaning that something other than a finger had penetrated her vagina through her hymenal tissue. A forensic interview of B. E. was conducted, and a recording of the interview was played for the jury at trial.

(a) Although Williamson claims that the victims' testimony in this case was uncorroborated and, thus, insufficient to support his convictions, he also concedes that, with one relevant exception addressed below, the testimony of a single witness is sufficient to prove the elements of the crime charged. OCGA § 24-4-8; see *Hammontree v. State*, 283 Ga. App. 736, 737 (1) (642 SE2d 412) (2007) (The victim's testimony alone sufficed to establish the elements of child molestation.). As shown above, the evidence not only included the victims' testimony, which was both direct evidence of their own molestation and similar transaction evidence of the other's abuse, but also included the testimony of outcry witnesses and recordings of the forensic interviews of both girls.

As for the lack of physical evidence of the offenses, the investigating police officers explained that they did not conduct any forensic testing of the inside of Williamson's home or seize any of his sheets, bedding, towels, etc. for testing for semen, blood or other substances because of the amount of time that had passed since the assaults had occurred, because of the number of people living in the residence at the time of those acts, and because some of the furniture had previously been in another person's residence. In addition, the investigators did not seize any condoms or lubricants from the home as there was no evidence of those being used during the assaults.

Accordingly, after considering the evidence presented by the State, we find that it was sufficient under the standard of *Jackson v. Virginia* to support Williamson's convictions. *Hammontree v. State*, 283 Ga. App. at 737 (1).

(b) One of the exceptions to the single witness rule cited above is for the offense of statutory rape, which requires evidence to corroborate the victim's testimony in order to sustain a conviction. See OCGA § 16-6-3 (a) (providing that no one shall be convicted for statutory rape based upon the unsupported testimony of the victim). Even so,

> [t]he quantum of corroboration needed in a [statutory] rape case is not that which is in itself sufficient to convict the accused, but only that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient corroboration, and ultimately the question of corroboration is one for the jury.

(Citation and punctuation omitted.) *Davis v. State*, 204 Ga. App. 657 (1) (420 SE2d 349) (1992).

In this case, Williamson was convicted of statutory rape based upon his having had sexual intercourse with B. E. As shown above, in addition to B. E.'s testimony about the acts, her sister testified about B. E.'s statements to her and about her observation of B. E. and Williamson going into his bedroom together during the relevant time period. B. E.'s great aunt testified that, when B. E. told her about the sexual abuse, the girl specifically said that Williamson was having sex with her. The recording of B. E.'s forensic interview was played for the jury. Finally, the nurse who examined B. E. testified that B. E. had experienced blunt force trauma to her hymen that could only have resulted from vaginal penetration.

We conclude that this evidence was sufficient corroboration of B. E.'s testimony for a jury to find Williamson guilty beyond a reasonable doubt of the statutory rape of B. E. See *Hill v. State*, 295 Ga. App. 360, 361-362 (1) (671 SE2d 853) (2008) ("A child-victim's prior consistent statements, as recounted by third parties to whom such statements were made, can constitute sufficient substantive evidence of corroboration [to support a conviction] in a statutory rape case.") (citations and punctuation omitted).[2]

---

[2] See also *Weldon v. State*, 270 Ga. App. 262, 264 (2) (606 SE2d 329) (2004) (The evidence was sufficient to support the defendant's statutory rape conviction, because the victim's testimony was corroborated by evidence of the victim's outcry statements to her mother and the police and by the results of a sexual assault medical exam.); *Falak v. State*, 261 Ga. App. 404, 405 (1) (583 SE2d 146) (2003) (The evidence was sufficient to support the defendant's statutory

(c) To the extent Williamson contends that the victims' testimony was inconsistent with or even contradicted by other evidence presented, it is axiomatic that it is the function of the jury, not this Court, to judge the credibility of the witnesses and to resolve conflicts in the evidence, when necessary. OCGA § 24-9-80; see *Jackson v. Virginia*, 443 U. S. at 319 (III) (B); *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). The transcript in this case shows that Williamson's counsel thoroughly cross-examined the State's witnesses, presented the testimony of two witnesses on Williamson's behalf, and emphasized the purported problems with the victims' testimony during closing arguments. As noted above, under these circumstances, it was solely for the jury to decide whether inconsistencies in the evidence existed and, if so, to resolve them.

2. Williamson contends that the trial court erred in denying his motion for a mistrial, arguing that the State "willfully, intentionally, maliciously and unfairly impugned [his] right to remain silent."

> [T]he fact that a defendant has exercised the right to remain silent is not to be used against the defendant at trial. However, an improper comment on the defendant's silence does not necessarily require a reversal. The grant or denial of a mistrial is within the trial court's sound discretion, and the appellate court will not interfere with the trial court's exercise of that discretion unless it is clear that a mistrial was essential to preserve the right to a fair trial. Furthermore, testimony about the defendant remaining silent is not deemed to be prejudicial if it is made during a narrative on the part of the authorities of a course of events and apparently was not intended to, nor did it have the effect of, being probative on the guilt or innocence of the defendant. Indeed, to warrant a reversal of a defendant's conviction, the evidence of the election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury.

(Citations and punctuation omitted.) *Whitaker v. State*, 283 Ga. 521, 524 (3) (661 SE2d 557) (2008).

In this case, the following trial testimony is at issue. According to the police officer who was investigating L. P.'s molestation allegations in 2005, after she witnessed L. P.'s forensic interview, she became

---

rape conviction, because the victim's testimony was corroborated by evidence of the victim's outcry statements to a mental health counselor and by the results of a sexual assault medical exam.).

concerned for the safety of the other children who lived in Williamson's home. She met with her supervisor and they jointly decided to conduct a warrantless arrest of Williamson at his home. The investigator testified that, when she and a Department caseworker arrived at Williamson's home, she asked him "to step outside so I could talk with him and explain what was going on. Well, he was very belligerent and refused to talk with me or go outside to discuss anything." Outside the presence of the jury, defense counsel moved for a mistrial, objecting on the basis that the investigator's testimony was a "testimonial comment[ ] on my client's invocation of his right to remain silent." After conducting a hearing, the trial court denied the motion and then instructed the jury as follows:

> There was . . . a statement or testimony made with reference to the fact that this defendant[,] when [the investigator] appeared to arrest him[,] refused to talk to [the investigator]. . . . I charge you that[,] under the Fifth Amendment to the Constitution of the United States[,] a defendant in a criminal case is under no duty to present any evidence tending to prove innocence and is not required to take the stand and testify in the case. If the defendant elects not to testify, no inference hurtful, harmful or adverse to the defendant shall be drawn by the jury[,] nor shall such fact be held against the defendant in any way. . . . I would emphasize to you that the defendant is under no duty not only to present evidence tending to prove his innocence, he is under no duty to talk to the police, to this officer or to any other officer with reference to these matters. . . . Is there any member of this jury who feels that they cannot abide by the [c]ourt's instructions with reference to those particular issues?

When none of the jurors responded affirmatively, defense counsel renewed his motion for mistrial, which the court again denied.

Pretermitting whether the investigator's comment, made during her narrative about what had happened during her initial investigation of the case and prior to her arrest of Williamson, could be construed as a comment on his invocation of his constitutional right to remain silent, we find no abuse of discretion in the trial court's denial of Williamson's motion for a mistrial in this case. Williamson's defense at trial was that the alleged molestations had never happened; that Williamson did not live in the home at the time of B. E.'s alleged assaults; that the victims knew each other and had collaborated and conspired against him; that the victims and some of the witnesses were motivated to fabricate the allegations by certain

factors that were completely unrelated to him; and that the investigators had simply relied on the victims' allegations instead of properly investigating the case. Thus, the investigator's comment did not point at any specific defense offered by Williamson. Nor is there any indication in the record that the comment was intended to improperly influence the determination of Williamson's guilt or innocence, or that it actually did so. And, finally, the trial court promptly gave a thorough curative instruction to the jury.

Under these circumstances, we conclude that it was not an abuse of the trial court's discretion to deny Williamson's motion for a mistrial. *Whitaker v. State*, 283 Ga. at 524 (3).

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*

DECIDED APRIL 6, 2012.

*Steven A. Miller*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, Alan C. Norton, Assistant District Attorney*, for appellee.