**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**August 10, 2012**

# In the Court of Appeals of Georgia

A12A0924. CLARKE v. THE STATE.

MIKELL, Presiding Judge.

Having been convicted by a jury of nine counts of felony theft by taking, Sandra Clarke appeals from the trial court's denial of her motion for a new trial, arguing that the evidence was insufficient and alleging ineffective assistance of counsel. For the following reasons, we affirm.

1. Clarke contends that the evidence was insufficient to support her conviction.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for

a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

So viewed, the record shows that Clarke, an attorney, began working with the law firm Sliz/McKinney in May 2003. Initially, she rented office space from the firm while handling her own clients through Gwinnett County's indigent defense program and assisting the firm on other cases for an hourly fee. She was not obligated to share her indigent defense earnings with Sliz/McKinney. In November 2003, Clarke was unable to pay increased rent to the firm, so the parties entered into a new agreement. The firm paid her $50,000 per year, and she stopped paying rent. Jan McKinney, one of the lawyers at Sliz/McKinney, testified that Clarke became an employee, and that "anything that she earned as far as a fee was the property of the firm, whether it was an appointed case, a retained case, whatever it was." Clarke, however, contended that she was an independent contractor and that her indigent defense fees belonged to her and were not part of her agreement with the firm. On May 14, 2008, a grand jury indicted Clarke on forty-three counts of theft by taking in violation of OCGA § 16-8-2 related to payments she received for indigent defense work, but did not transmit to

---

[1] (Footnote omitted.) *Dawson v. State*, 271 Ga. App. 217 (1) (609 SE2d 158) (2005).

2

the firm. The trial court granted Clarke's plea in bar based upon a statute of limitation defense as to thirty-three misdemeanor counts. The court directed a verdict on one felony count, and the jury returned a guilty verdict on the remaining nine felony counts.

(a) In her first enumeration,[2] Clarke asserts that the state failed to prove that she had criminal intent, and that the issue is therefore a civil, rather than criminal matter. She also contends that Clarke kept the indigent defense money while acting under a claim of right in that "she believed she was entitled to those proceeds."

OCGA § 16-8-2 pertinently provides that "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property . . . ." But one who takes under a fair or honest claim of right does not commit larceny or theft.[3] Notwithstanding that OCGA § 16-8-2 is not designed to

---

[2] Clarke has failed to indicate the method by which her enumerated errors were preserved for our review as required by Court of Appeals Rule 25 (a) (1). "Although we have reviewed each of the delineated enumerations, this Court will not cull the record in search of error on behalf of a party. Accordingly, if we have missed something in the record or misconstrued an argument, the responsibility rests with counsel." *Burrowes v. State*, 296 Ga. App. 629, 631 (1) (675 SE2d 518) (2009) (punctuation omitted.)

[3] OCGA § 16-8-10 (2).

punish a simple breach of contract, the presence of intent distinguishes theft by taking from breach of contract.[4] There was evidence of intent in the instant case.

For example, it is undisputed that Clarke wrote letters to indigent defense clients on Sliz/McKinney letterhead, entered the hours she worked on indigent defense cases into the firm's time and billing software system, and listed the firm's address and/or telephone number on appointment of counsel and first appearance documents for indigent defense clients. Renee Brown, Sliz/McKinney's bookkeeper, testified that the firm provided Clarke with color-coded files for her indigent defense cases and that the receptionist opened and managed those files for her. However, most of the indigent defense payments were sent to Clarke at a post office box, not at the firm's address.

In July 2004, the firm received a check for about $1,600, made out to Clarke from Gwinnett County for indigent defense services she performed for multiple clients. As the county does not allow a firm to be paid for indigent defense work, all checks are made out to the individual lawyer. Some of the client work covered by that check had been done before Clarke's November 2003 agreement with the firm, and

---

[4] See *Tukes v. State*, 250 Ga. App. 117, 118 (1) (a) (550 SE2d 678) (2001) (the presence of fraudulent intent distinguishes theft by conversion from breach of contract).

4

some had been done after the agreement was in place. After a discussion with McKinney about which work was done when, Clarke wrote a check to the firm for approximately $761 to cover the amount she received for work done after her new employment agreement was in place. When Sliz/McKinney did not receive any more indigent defense monies from Clarke, McKinney asked Clarke why the firm wasn't getting paid and Clarke said she had been too busy to bill the time. Later, in a meeting held around the time Clarke left the firm, in March 2005, Clarke told McKinney that she had billed the county and was just waiting for the checks to be sent to the firm. At other meetings held after Clarke left the firm, McKinney testified that she told Clarke that Clarke owed the firm more than $17,000. Clarke countered that she owed about $9,500, but did not deny the debt. Clarke also sent the firm a letter saying, "If you'll send me a bill, I'll send you a check." The evidence shows, however, that Clarke cashed indigent defense checks she received from the county and deposited the money in her personal account. The firm did not receive any indigent defense monies from Clarke after she left the firm.

Clarke counters that the evidence is insufficient because she did not conceal the existence of the post office box to which the indigent defense checks were sent,

and that she wrote the $761 check to pay attorney Jeff Sliz for assisting her with a case and not because of the employment agreement.

In circumstantial cases, however,

> the question [of] whether there is a reasonable hypothesis favorable to the accused is the jury's province. Questions as to reasonableness are generally to be decided by the jury which heard the evidence, and finds beyond a reasonable doubt that there is no reasonable hypothesis other than guilt. The appellate court will not disturb that finding, unless the verdict of guilty is insupportable as a matter of law.[5]

Further, "[c]onflicts in witness testimony are matters of credibility for the jury to resolve."[6] Clarke's failure to deny the debt and promises to pay, coupled with evidence of her billing, timekeeping, and collection practices, provided evidence from which a jury could infer that Clarke was not acting under a claim of right, and that she had the intent required to commit theft by taking.[7]

---

[5] (Citation and footnote omitted.) *Crutchfield v. State*, 269 Ga. App. 69, 71 (1) (603 SE2d 462) (2004).

[6] (Citations omitted.) Id. at 69 (1).

[7] *Brown v. State*, 302 Ga. App. 641, 643 (1) (692 SE2d 9) (2010) (criminal intent to deprive owner of property may be inferred from circumstantial evidence).

(b) Clarke further contends that the evidence was insufficient in that the state failed to prove the indigent defense money she received was the property of Sliz/McKinney. Specifically, she argues that the state failed to prove there was a valid employment contract requiring her to pay the firm the proceeds from her indigent defense work, and that the weight of the evidence showed that she was an independent contractor rather than an employee.

Pretermitting whether Clarke was an employee or independent contractor, the evidence shows that an agreement existed between Clarke and Sliz/McKinney for the payment of indigent defense monies to the firm. While there was no written contract, there was an oral agreement with specific terms related to Clarke's obligation to pay her indigent defense monies to the firm. McKinney testified that Clarke became an employee in November 2003, when she was given a salary: "At that point in time, the deal changed. She was now an employee of the firm. And so anything that she earned as far as a fee was the property of the firm, whether it was an appointed case, a retained case, whatever it was." McKinney testified on cross examination, when asked about the "definite terms" of the agreement, that Clarke "was supposed to pay all monies that were received by her for legal services to the firm. In exchange, she would get a salary."

7

This evidence, coupled with the evidence discussed in Division 1 (a), was sufficient. The resolution of evidentiary conflicts and inconsistencies is a matter of credibility for the finder of fact, not this Court,[8] and the jury chose to believe Sliz/McKinney. Further, where some evidence supports each necessary element of the state's case, the evidence is sufficient for this Court to uphold the jury's verdict.[9]

(c) Contrary to Clarke's assertions, the Statute of Frauds, OCGA § 13-5-30 (5), which provides that an agreement must be in writing if it cannot be performed within one year of its making, is not implicated here. Full performance of a contract, which has been accepted, constitutes an exception to the Statute of Frauds, pursuant to OCGA § 13-5-31 (2). Because the record demonstrates that Sliz/McKinney performed its part of the agreement in paying her a salary starting in November 2003, providing rent-free office space, and offering administrative support, among other things, this contention is without merit. "[T]he Statute of Frauds does not bar the enforcement of

---

[8] *Dawson*, supra.

[9] Id.

a contract where there has been performance on one side, accepted by the other in accordance with the contract."[10]

(d) Clarke also contends that the evidence was insufficient to show that Sliz/McKinney was the true owner of the property because Sliz and McKinney had not formed a legal partnership. In contravention of Court of Appeals Rule 25 (c) (2), Clarke cites no legal authority supporting this claim of error, thus, it is waived.

2. Clarke also contends that she received ineffective assistance of counsel because her trial lawyer failed to file a special demurrer to an allegedly imperfect indictment. The indictment, she argues, alleged that the crimes were committed between two dates rather than on dates "unknown to the Grand Jury." Clarke argues that if the court had granted the special demurrer and the state had reindicted her, the new indictment *may* have fallen outside the statute of limitation.

"To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient *and* that the deficient performance prejudiced

---

[10] (Citation and punctuation omitted.) *Amax Inc. v. Fletcher*, 166 Ga. App. 789, 790 (1) (305 SE2d 601) (1983). See also OCGA § 13-5-31 (3); *Ford Clinic, Inc. v. Potter*, 246 Ga. App. 320, 322 (540 SE2d 275) (2000) (contract is removed from operation of Statute of Frauds where one party has partially performed such that a fraud on that party would result if the court did not compel performance).

9

the defense."[11] The performance and prejudice prongs are mixed questions of fact and law, and "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[12] Where a defendant "fails to establish that his counsel's performance prejudicially affected his defense, we need not evaluate whether counsel's performance was deficient, because failure to satisfy either prong of the *Strickland v. Washington* standard is fatal to an ineffective assistance claim."[13]

Here, Clarke's trial counsel testified that he chose not to file the demurrer because, based on his professional judgment, the phrase "unknown to the Grand Jury," was not material to the language of the indictment. While he testified at the hearing on Clarke's motion for a new trial that he should have filed a demurrer, he also testified that neither he nor Clarke were confused by the allegations in the indictment and that Clarke had adequate notice of the accusations against her. The

---

[11] (Footnote omitted; emphasis supplied.) *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000). Accord *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[12] (Footnote omitted.) *Suggs*, supra.

[13] (Citations omitted.) *Veasley v. State*, 312 Ga. App. 728, 731 (2) (719 SE2d 585) (2011).

10

indictment accused Clarke of crimes committed between various dates specific to each count, between 2004 and 2008. The indictment did not allege that the dates of the offenses were material.

> [W]here the exact date is not stated as a material allegation of the time of commission of the offense in the indictment, it may be proved as of any time within the statute of limitations, as long as the defendant is not surprised or prejudiced by presentation of evidence that the offenses occurred at a time substantially different from that alleged in the indictment.[14]

Also, the charges against Clarke were based on funds she retained, which were disbursed to her on different dates and which related to the representation of specific indigent defense clients. Clarke does not show how the state reasonably could have narrowed the dates in the indictment, as it is unclear when she developed the requisite intent as to each charge.[15] Further, Clarke has failed to "demonstrate that the length of the period in which the indictment alleged the crimes were committed materially affected [her] ability to present a defense."[16] Clarke contends that if her trial counsel

---

[14] (Citations and punctuation omitted.) *Davidson v. State*, 231 Ga. App. 605, 608 (2) (b) (499 SE2d 697) (1998).

[15] See *Robbins v. State*, 290 Ga. App. 323, 329 (4) (a) (659 SE2d 628) (2008).

[16] Id.

had filed a special demurrer and gotten the first indictment quashed, the state *might* have filed a new indictment outside the statute of limitation. However, it is equally possible that the state would have reindicted Clarke *within* the statute of limitation.[17] "[H]arm cannot be shown by mere speculation and conjecture unsupported by the record."[18] Clarke has "failed to demonstrate a reasonable likelihood that, but for defense counsel's failure to demur to the indictment, the outcome of trial would have differed."[19] This claim of error fails.

*Judgment affirmed. Miller and Ray, JJ., concur.*

---

[17] See *Wallace v. State*, 253 Ga. App. 220, 222 (3) (558 SE2d 773) (2002) (counsel not ineffective for failing to file a special demurrer to allegedly flawed indictment where State was not barred from reindicting defendant).

[18] (Punctuation and footnote omitted.) *Foster v. State*, 286 Ga. App. 250, 254 (3) (a) (649 SE2d 322) (2007).

[19] (Citation omitted.) *Robbins*, supra.