**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J., and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**February 15, 2013**

# In the Court of Appeals of Georgia

A12A1811. MOORE v. THE STATE.

A12A2236. PHILLIPS v. THE STATE.

BOGGS, Judge.

These cases were consolidated for purposes of appeal. Justin Moore and his wife Jessica Phillips were jointly tried for crimes against Phillips' daughter (Moore's stepdaughter). Following the denial of their separate amended motions for new trial, Moore and Phillips each appeal, enumerating several errors. Having reviewed the record, we find their claims to be without merit and affirm in both cases.

Construed in the light most favorable to the verdict, the evidence showed that at around noon, the victim, K. M., then nearly six years old, appeared at a neighbor's home, about a block away from her home, wearing only panties and sandals. The neighbor, who spoke Spanish and only a little English, brought K. M. into her home

and immediately called her daughter so that K. M. could speak with her. K. M. told the neighbor's daughter that "her father was going to kill her. And she said that she wanted to stay with my mom, and that she will learn Spanish." After talking to K. M. on the phone, the neighbor's daughter called police. The neighbor explained that she went to open the door to see if someone was outside looking for K. M., but K. M. "did not want me to open that door. She didn't want me to. She was frightened."

When the police arrived, K. M. told an officer that "she had ran to where we were at the time, because she had peed her bed, and that her parents were going to beat her and kill her because she had peed the bed."

A second officer testified that K. M. told her "she had peed the bed, and she knew she was going to get a whipping, so she ran out of the house when she had the opportunity. She said she crossed the street, went behind a set of duplexes and started knocking on back doors." K. M. told this second officer that her "mom and dad" beat her with coat hangers, extension cords, and a belt. The officer looked under K. M.'s clothing and observed "linear marks, or looping marks" on K. M.'s chest, right side, lower back, buttocks, legs, and groin area. The officer explained that K. M. identified Phillips and Moore as her "mom and dad," and that "[s]he used their first and last names." K. M. was then taken into protective custody.

2

A child protective services investigator testified that she spoke with K. M. at her home on the same day and that K. M. showed her an extension cord and said "this is the extension cord that my daddy beat me with." The investigator noticed scarring on K. M.'s "legs, back, abdomen, and vagina area. The scars were in - - it looked sort of like a loop. And they were found all over her body. Some of them were lighter in coloration, and some of them were darker in coloration." Pictures of K. M.'s injuries were introduced into evidence.

In a second interview, K. M. told the investigator that "her daddy . . . beat her with an extension cord, a belt, a hanger and a hand. And she also mentioned that her mother Jessica Phillips, beat her with a belt and her hand. . . . She said that she thought her daddy was about to beat her raw." K. M. told the investigator that Moore "beat her so hard with two hangers that she pooped her panties," and that she also "got whipped" for falling asleep in the corner and wetting the bed.

A pediatric nurse practitioner testified that she performed a physical examination of K. M. five days after she was taken into protective custody. She explained that K. M. had both linear and curvilinear marks on her chest and abdomen, a large bruise on her lower back, a mark on her buttocks, and extensive marks on her thighs "too numerous to count." The nurse practitioner stated further that the scars

3

"showed different degrees of healing," were not made at the same time, and were made with different objects under different amounts of force. She explained that the marks she observed on K. M. were typically made by cords and belts. When asked if K. M.'s scars could have been made more than a year earlier, the nurse practitioner stated: "It's possible, but I don't - - think it's probable."

The second officer at the scene of the neighbor's home interviewed K. M. over a month later. In the interview, played for the jury at trial, K. M. explained that Moore "whipped [her] with an extension cord, belt, hangers, and that's all," but that her mother, Phillips, would "whip [her] with a belt." K. M. also told her that Moore "would take dog leashes and tie her arms behind her back, and her ankles or around her legs, and hang her [upside down] from the bedroom door" and whip her. K. M. pointed to her bruises during the interview and explained that in one location "my skin was off. It was all teared off right here. Then it healed up."

K. M., eight years old at the time of trial, testified that she ran to the "Spanish lady's house for help" because Moore was hitting her with hangers, belts, and leashes. She stated further that Phillips hit her with belts and that on one occasion Moore tied her up with leashes, tied her to a door, and "whipped" her with hangers, belts and extension cords.

Moore and Phillips were charged with cruelty to children in the first degree for causing K. M. "cruel and excessive physical pain by beating" her. Moore was also charged with two counts of child molestation and one count of aggravated child molestation.[1] The jury found both Moore and Phillips guilty of cruelty to children, but acquitted Moore on the three molestation counts.

Case No. A12A1811

1. Moore contends that the circumstantial evidence failed to exclude the reasonable hypothesis that K. M.'s biological father "perpetrated the physical abuse."[2] While Phillips told officers that the marks on K. M. were inflicted by K. M.'s biological father, K. M. told officers and an investigator, and testified at trial, that Moore hit her with hangers, belts, and leashes, and that he tied her to a door and beat her. She testified further that Moore beat her the day she ran to the neighbor's home. This was *direct* evidence sufficient to sustain Moore's conviction for cruelty to

---

[1]These charges stemmed from K. M.'s statement to a forensic interviewer that Moore put his penis "next to her private," that he touched her private, and that he "peed in her mouth and ear."

[2]There was evidence presented by Phillips that K. M.'s injuries had been inflicted by her biological father, who was also named Justin, and who was incarcerated in Arizona at the time of the event giving rise to the charges here.

5

children in the first degree. See *Chambers v. State*, 313 Ga. App. 39, 40 (1) (720 SE2d 358) (2011); see also OCGA § 16-5-70 (b).

2. Moore argues that the State failed to prove venue beyond a reasonable doubt. In general, criminal actions should be tried in the county where the crime occurred. OCGA § 17-2-2 (a). "We have held that venue is a jurisdictional fact and an essential element that the State must prove beyond a reasonable doubt for every crime. The State may use both direct and circumstantial evidence to prove venue." (Citations omitted.) *Lanham v. State*, 291 Ga. 625, 626 (2) (732 SE2d 72) (2012).

The evidence showed that K. M. lived with Phillips and Moore at the family's residence which was located in Cobb County. There was evidence that Moore tied K. M. up, tied her to her bedroom door at the home and "whipped" her. K. M. also testified that Moore had hit her at the family's home on the day she ran to her neighbor's home. Viewing the evidence as a whole, we conclude that the State met its burden of proving beyond a reasonable doubt that venue was properly in Cobb County. See *Sherrell v. State*, 317 Ga. App. 571, 574 (1) (731 SE2d 790) (2012); *Glover v. State*, 292 Ga. App. 22, 25 (2) (663 SE2d 772) (2008) (venue established where evidence showed that victim lived with defendant in Cobb County and that defendant gave victim whippings on a daily basis).

3. Moore complains that the trial judge violated OCGA § 17-8-57 by intimating his opinion about the credibility of K. M. and Moore's guilt when he called K. M. "honey" in front of the jury. He argues that this act "could have no other effect than [to] engender[] sympathy for [K. M.] and making her appear, in the eyes of the trial court, to be a victim of Mr. Moore."

OCGA § 17-8-57 provides: "It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." During her testimony, the trial court instructed K. M.: "Hey, Honey, will you put the microphone - - or just talk a little closer to the microphone, okay? We just need to make sure we can hear you." Defense counsel did not object or move for a mistrial. "Consequently, a new trial would be warranted 'only if the trial court's comments seriously affected the fairness, integrity, and public reputation of these judicial proceedings.'" (Citations omitted.) *Kohler v. State*, 300 Ga. App. 692, 698 (4) (686 SE2d 328) (2009).

Moore cites *Craft v. State*, 274 Ga. App. 410 (618 SE2d 104) (2005) (physical precedent only) and *Callaham v. State*, 305 Ga. App. 626 (700 SE2d 624) (2010) to support his argument here, but these cases are distinguishable. In *Craft*, the trial court posed specific questions to a witness concerning the character and grade point

7

average of the victims. Supra, 274 Ga. App. at 411-412 (1). And in *Callaham*, a neighbor identified the defendant as the person who shot the victim. Supra, 305 Ga. App. at 627 (1). While the defendant was on the stand to testify in his own defense, the trial court asked the defendant: "do you know why the neighbor that lives across the street would come in here and say you're the one that shot? He's not related to anybody." Id. We held that the trial court's question and comment intimated that the neighbor's testimony was believable because he was an independent witness unrelated to any of the parties. Id. at 628 (1).

Here, the trial court's use of the word "honey" to address eight-year-old K. M. was not an opinion of her credibility like in *Craft* and *Callaham.* The comment did not seriously affect the fairness, integrity, and public reputation of the judicial proceedings, and was therefore not a violation of OCGA § 17-8-57. See, e. g., *Johnson v. State*, 272 Ga. App. 385, 386-387 (3) (612 SE2d 518) (2005) (trial judge calling victim "sugar" did not seriously affect the fairness or integrity of the proceedings); *Kent v. State*, 294 Ga. App. 134, 138-139 (2) (668 SE2d 442) (2008) (trial court's statement to victim with the mental age of a 10-year-old, that he did a "great job" following his testimony did not seriously affect the fairness, integrity or public reputation of proceedings).

8

4. Moore contends that the trial court erred in denying his motion for a mistrial made on the ground that a State's witness improperly commented on his right to remain silent. "A motion for mistrial is committed to the discretion of the trial court, and ordinarily, the denial of such a motion amounts to an abuse of discretion only when it is apparent that a mistrial is essential to the preservation of the right to a fair trial." (Citations and punctuation omitted.) *Sears v. State*, 292 Ga. 64, 67 (3) (734 SE2d 345) (2012).

The officer who first arrived at the neighbor's home testified to the course of events after he arrived on the scene. He explained that when he went to K. M.'s home to speak with her mother and Moore, "[a detective] . . . went inside the townhome to speak with [Moore]. And as I recall, he didn't - - he didn't want to answer any questions." Trial counsel objected, and out of the presence of the jury moved for a mistrial arguing that the officer improperly commented on Moore's right to remain silent. Defense counsel argued further that a curative instruction would only "re-ring[ ]the bell, creat[ing] an even larger problem in this situation." The trial court denied the motion for mistrial finding that the officer's statement was unintentional. Prior to the return of the jury, the trial court instructed the officer to refrain from making any

9

statements concerning Moore's right to remain silent. When the jury returned, the trial court instructed it to "disregard the last statement of the police officer."

"It is true enough that testimony commenting upon the silence of the accused is, generally speaking, 'far more prejudicial than probative.' But the improper admission of prejudicial testimony does not always require a mistrial." (Citations omitted.) *Sears*, supra, 292 Ga. at 68 (3).

> [T]estimony about the defendant remaining silent is not deemed to be prejudicial if it is made during a narrative on the part of the authorities of a course of events and apparently was not intended to, nor did it have the effect of, being probative on the guilt or innocence of the defendant. Indeed, to warrant a reversal of a defendant's conviction, the evidence of the election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury.

(Citations and punctuation omitted.) *Whitaker v. State*, 283 Ga. 521, 524 (3) (661 SE2d 557) (2008). This is exactly the circumstance presented here. The officer's statements were made during a narrative of the course of events and "'did not strike at or point directly at the substance of defendant's defense.'" (Citation and punctuation omitted.) *Berryhill v. State*, 285 Ga. 198, 203 (5) (674 SE2d 920) (2009); see also *Whitaker*, supra; *Williamson v. State*, 315 Ga. App. 421, 427 (2) (727 SE2d

211) (2012). Moreover, the trial court instructed the jury to disregard the comments. *Berryhill*, supra; *Williamson*, supra. Under these circumstances we find no abuse of the trial court's discretion in denying the motion for mistrial. Id.

Case No. A12A2236

5. Phillips argues that the trial court erred in denying her motion to sever her trial from that of Moore.

> Since the grant or denial of a motion to sever is left in the discretion of the trial court, its ruling will only be reversed for an abuse of discretion . . . Factors the trial court should consider in exercising its discretion include: (1) whether the number of defendants creates confusion of the evidence and law applicable to each defendant; (2) whether a danger exists that evidence admissible against one defendant will be considered against the other, despite cautionary instructions; and (3) whether the defenses are antagonistic.

(Citations and punctuation omitted.) *Holland v. State*, 310 Ga. App. 623, 624 (1) (714 SE2d 126) (2011). "The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process." (Citations and footnote omitted.) *Character v. State*, 285 Ga. 112, 118 (5) (674 SE2d 280) (2009).

11

Phillips argues that the law applicable to Moore's charges of aggravated child molestation and child molestation was not applicable to the single charge against her of child cruelty, and would likely cause confusion in the eyes of the jury. She argues further that the evidence against Moore would likely be considered against her, including the evidence that Moore hung K. M. to a door while he beat her. Finally, Phillips contends that she and Moore had antagonistic defenses as they were the only two adults living with K. M. when the injuries were likely inflicted.

But "[t]here was no danger of confusion because of the number of defendants, there being only two." *Kelley v. State*, 248 Ga. 133, 135 (3) (281 SE2d 589) (1981). And their defenses were not antagonistic. See *Rivers v. State*, 178 Ga. App. 310, 311 (2) (342 SE2d 781) (1986). Both Phillips and Moore denied abusing K. M. and Phillips claimed that K. M.'s injuries were inflicted by K. M.'s biological father. See, e. g., *Wicks v. State*, 278 Ga. 550, 551 (3) (604 SE2d 768) (2004) (defenses not antagonistic where defendant and co-defendant denied participation in crimes). The fact that Moore was charged with additional crimes did not require severance. *Griffin v. State*, __ Ga. __ (7) (Case No. S12A1946; decided January 22, 2013) (that co-defendant was charged with additional crimes in joint trial did not require severance in absence of showing jury was confused). The trial court properly charged the jury:

12

"conviction of one Defendant does not necessarily require conviction of another. You, the jury, must determine the guilt or innocence of each Defendant separately." The court then recited each of the charges against Phillips and Moore individually. Because Phillips has failed to show that she suffered prejudice by the joint trial, we cannot say that the trial court abused its discretion in denying her motion to sever.

6. Phillips contends that the trial court erred in failing to inquire as to the competency of K. M. She argues that because K. M. was under the age of 14, the court should have sua sponte made a determination as to her competency to ensure that she sufficiently understood the nature of the oath. Former OCGA § 24-9-5, effective during Phillips' trial, provided:

> (a) Except as provided in subsection (b) of this Code section, persons who do not have the use of reason, such as idiots, lunatics during lunacy, and children who do not understand the nature of an oath, shall be incompetent witnesses.

> (b) Notwithstanding the provisions of subsection (a) of this Code section, in all cases involving deprivation as defined by Code Section 15-11-2, or in criminal cases involving child molestation, *and in all other criminal cases in which a child was a victim of or a witness to any crime, any such child shall be competent to testify, and his credibility shall be determined as provided in Article 4 of this chapter*.

13

(Emphasis supplied.) Therefore, as a child victim of a crime, K. M. is excepted from a competency challenge based upon a claim that she does not sufficiently understand the nature of the oath.[3] See *Clemons v. State*, 288 Ga. 445, 446 (2) (704 SE2d 762) (2011); *Jeffries v. State*, 272 Ga. 510, 513 (6) (530 SE2d 714) (2000).[4]

7. Phillips asserts that the trial court erred in allowing a witness to testify over his trial counsel's objection. During trial, the State called a victim-witness advocate to impeach K. M.'s testimony that differed from statements K. M. made prior to trial concerning whether Moore molested her. Phillips contends that it was improper for the trial court to allow this witness to testify because she was not on the State's witness list and was not sequestered. But even if the trial court erred in allowing this witness to testify, Phillips has failed to show any harm. The testimony given by the witness concerned K. M.'s prior statement about whether *Moore* had sexually abused her. As this testimony was unrelated to the charge against Phillips (and Moore was acquitted of the child molestation charges ), Phillips has failed show harm from any

---

[3]We note that the trial court explained to K. M. that it was important for her to tell the truth, and K. M. responded affirmatively when the court asked if she understood "what the truth is[.]"

[4]To the extent that Phillips argues that K. M. did not have the use of reason, she has pointed to nothing in the record to indicate that K. M. was incompetent on that basis.

14

error in allowing this witness to testify. See, e. g., *Wakily v. State*, 225 Ga. App. 56, 59 (4) (483 SE2d 313) (1997) (whether victim knew defendant's companion had no bearing on whether defendant was involved in crimes charged, so any error in impeachment techniques was harmless).

8. Phillips claims that she was denied effective assistance of counsel. "To prevail on a claim of ineffective assistance of counsel, Appellant must show both that his trial attorney's performance was deficient and that the deficient performance was prejudicial to his defense. However, this Court is not required to address both components if the defendant has made an insufficient showing on one." (Citations and punctuation omitted.) *Whitaker v. State*, 291 Ga. 139, 141 (2) (728 SE2d 209) (2012). And "[i]n reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Green v. State*, 291 Ga. 287, 296 (10) (728 SE2d 668) (2012).

(a) Phillips contends that trial counsel "failed to address the likely possibility that Phillips suffers from [b]attered [w]omen's [s]yndrome." But Phillips' counsel explained at the hearing on the motion for new trial that he did not believe battered woman syndrome applied in this case because there was no indication by Phillips or

15

her psychological evaluation that Moore abused her. "The decision not to pursue a defense is one of trial strategy with which we will not generally interfere. Trial strategy and tactics do not equate with ineffective assistance of counsel." (Citation and punctuation omitted.) *Smith v. State*, 231 Ga. App. 677, 684 (6) (499 SE2d 663) (1998) (trial counsel in reasoned judgment determined assertion of battered woman syndrome defense was unrealistic). Because Phillips has failed to show that counsel performed deficiently, her claim of ineffectiveness fails on this ground.

(b) Phillips argues that counsel failed to obtain an independent medical expert to "establish the method used to create K. M.'s scars and establish their longevity." When asked about his decision not to obtain an expert, trial counsel stated:

> the State's expert couldn't identify the time periods with any certainty as to when these injuries were - - supposedly had happened. So I thought we didn't need to have an expert . . . . [T]here was no doubt that there was[sic] injuries. The photographs were terrible in this case. So I thought that basically with the State being unable to identify time periods, I thought that was in our best interest.

Again, trial tactics and strategy do not equate with ineffective assistance. *Smith*, supra. Trial counsel made a strategic decision not to obtain an expert in the face of the State's difficulty in identifying the time periods in which K. M. suffered scars.

16

Moreover, Phillips failed to produce such an expert at the hearing on the motion for new trial. "As this Court has held repeatedly, absent a proffer of what the testimony of his expert would have been at trial, [Phillips] cannot show that there is a reasonable probability that the outcome of the trial would have been different had [her] counsel taken the suggested course." (Citation, punctuation and footnote omitted.) *Mora v. State*, 295 Ga. App. 641, 648 (3) (d) (673 SE2d 23) (2009); see also *Sarratt v. State*, 299 Ga. App. 568, 570 (2) (a) (683 SE2d 10) (2009). Phillips has therefore failed to establish prejudice. See *Mora*, supra.

(c) Phillips contends that trial counsel should have objected to the verdict form because the charge against her was "sandwiched between two of [Moore's] charges." The form listed the child cruelty charge against Moore, then the child cruelty charge against Phillips, followed by the molestation charges against Moore. Trial counsel testified at the hearing on the motion for new trial that he did not object to the form of the verdict because he

> thought this was pretty clearly written. I mean, no doubt about it. [Phillips] couldn't be confused to be involved in Count Two. And [the jury] had to make a specific finding as to Count One. And I believe the Judge just gave a charge to make sure that the jury said to consider the evidence against one versus the other. I believe I requested that. So I thought this was adequate.

The decision not to object was therefore strategic and does not provide a basis for a claim of ineffectiveness. See, e.g., *Robison v. State*, 277 Ga. App. 133, 138 (3) (625 SE2d 533) (2006). Moreover, the trial court instructed the jury regarding the separate counts of the verdict form. Under these circumstances, Phillips has failed to make any showing that had counsel objected to the verdict form, there is a reasonable likelihood that the outcome of the trial would have been different. See *Wilcox v. State*, 297 Ga. App. 201, 205-207 (3) (677 SE2d 142) (2009) (defendant failed to demonstrate verdict form would mislead jurors).

(d) Phillips asserts that trial counsel failed to file a special demurrer to establish the date of the crime as a material allegation of the indictment. While trial counsel explained that he did not recall whether he had filed a demurrer in the case, he explained that in: "my understanding of the law, it could be anything within the statute of limitation, the time period." The indictment alleges that Phillips "on or about the 2nd day of October, 2008," caused cruel and excessive pain to K. M. by beating her.

> Where the exact date is not stated as a material allegation of the time of commission of the offense in the indictment, it may be proved as of any time within the statute of limitations, as long as the defendant is not surprised or prejudiced by presentation of evidence that the offenses

18

occurred at a time substantially different from that alleged in the indictment.

(Citation, punctuation and footnote omitted.) *Clarke v. State*, 317 Ga. App. 471, 476 (2) (731 SE2d 100) (2012); see *Coats v. State*, 303 Ga. App. 818, 820 (1) (695 SE2d 285) (2010). The exact date was not a material allegation of the indictment here. The evidence here showed that K. M. was beaten by Moore on October 2, 2008 and that Phillips beat her with belts on other occasions. The evidence showed further that K. M.'s scars were a year old or less. The State therefore proved that child cruelty occurred within the statute of limitation. See OCGA §§ 16-5-70 (e) (1) and 17-3-1 (c) (7-year limitation period for felony where victim is under the age of 18); see also *Clarke*, supra. And Phillips has failed to show that she was surprised or prejudiced by presentation of evidence that the offenses occurred at a time substantially different from that alleged in the indictment. See *Clarke*, supra. "Further, as we have previously noted, because a defendant can be re-indicted after the grant of a special demurrer, a failure to file such a demurrer generally will not support a finding of ineffective assistance of counsel." (Citations and punctuation omitted.) *Lewis v. State*, 304 Ga. App. 831, 837 (5) (698 SE2d 365) (2010). Phillips has therefore failed to

19

show that the outcome would have been different had counsel filed a special demurrer. *Clarke*, supra, 317 Ga. App. at 477 (2).

(e) Phillips argues that counsel was ineffective in failing to object to the testimony of a State's witness regarding injuries sustained by K. M. "outside of the temporal scope of the indictment." The nurse practitioner, testified that the most recent marks on K. M. were probably made "within the last couple of months," and that the older scars "could have been [made] several months prior." Trial counsel was not questioned concerning why he made no objection this witness' testimony. And in the absence of trial counsel's testimony, "we cannot assume that counsel's actions did not fall within the wide range of reasonable professional assistance that is presumed by *Strickland* [*v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)]." *Jackson v. State*, 288 Ga. App. 432, 434 (1) (a) (654 SE2d 232) (2007). Moreover, for the reasons explained above in Division 8 (d), this testimony was not improper as it was evidence that the crime was committed with the applicable statute of limitation. Phillips has therefore failed to establish that counsel's performance was deficient.

Phillips has failed to establish on each ground alleged either that her counsel was deficient or that any such deficient performance prejudiced her defense. The trial

20

court therefore did not err in rejecting her claim of ineffective assistance of trial counsel.

*Judgments affirmed. Doyle, P. J. and Andrews, P. J., concur*.