**FIFTH DIVISION
DILLARD, P. J.,
REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 26, 2017**

# In the Court of Appeals of Georgia

A16A2157. THE ESTATE OF ROBERT HUNTER NIXON et al. v. W. KEITH BARBER et al.

DILLARD, Presiding Judge.

The Estate of Robert Hunter Nixon, Kathy Nixon, and R. Bruce Nixon ("the Nixons") appeal from the trial court's grant of W. Keith Barber and W. Keith Barber, P.C.'s ("Barber") motion to dismiss the Nixons' action for legal malpractice. The Nixons argue on appeal that the trial court erred in dismissing their complaint based upon a failure to state a claim upon which relief could be granted because (1) they had an attorney-client relationship with Barber and (2) their claims are not barred by causation issues (as maintained by Barber). For the reasons set forth *infra*, we affirm.

The record reflects that beginning in April 2013, Barber represented Robert Hunter Nixon ("Hunter"), son of Kathy and R. Bruce Nixon ("Kathy" and "Bruce"),

on charges of selling and distributing marijuana. On September 3, 2014, Hunter terminated Barber's representation and retained new counsel.[1] But before a resolution was reached in his criminal prosecution, Hunter was killed in an automobile accident on November 7, 2014.

On March 1, 2015, the Nixons filed suit against Barber and asserted a single claim for legal malpractice. Specifically, the Nixons argued that Barber failed to properly represent Hunter in the criminal proceeding, which caused (1) unnecessary delay, (2) substantial stress, (3) extreme mental anguish, and (4) their son being unable to complete his college education when he subsequently died in a car accident. Among the allegations in the complaint were that Barber (1) negligently misrepresented the sentence Hunter faced; (2) was unprepared at a sentencing hearing; (3) made "numerous false and unsubstantiated statements to the Nixon Family"; (4) lied about being in contact with the prosecutor and working toward a better plea offer for Hunter; (5) had a conflict of interest between his duty as a defense attorney and his role as a municipal-court judge; (6) pushed Hunter to work

---

[1] Although the pleadings and appellate briefs allege that Barber was terminated on September 3, 2015, this must be a scrivener's error, as relevant incidents that allegedly occurred *after* Barber's termination took place in 2014, and suit was only filed in March 2015.

undercover with police and "asked for multiple unnecessary continuances"; and (7) botched his defense of Hunter, and that "had [the] criminal prosecution been handled correctly," Hunter would have been attending Georgia State University rather than returning to Atlanta after working in Savannah (when he was tragically killed in the car accident).

Barber answered and moved to dismiss the complaint on the grounds that it failed to state a claim upon which relief could be granted when (1) the Nixons could not establish that any of the negligence alleged in his representation was the proximate cause of their damages, and (2) Kathy and Bruce, Hunter's parents, lacked standing to sue for malpractice because they did not have an attorney-client relationship with Barber. The Nixons later amended their complaint to assert additional facts in support of finding that they had an attorney-client relationship with Barber. But in a summary order (on May 9, 2016), the trial court granted Barber's motion to dismiss for failure to state a claim upon which relief could be granted. This appeal by the Nixons follows.

It is well established that a motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless

(1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.[2]

And when a motion to dismiss is considered, "all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor."[3]

Moreover, a plaintiff is not required to "plead in the complaint facts sufficient to set out each element of a cause of action so long as it puts the opposing party on reasonable notice of the issues that must be defended against."[4] And if, within the framework of the complaint, "evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient."[5] At the appellate level, we review

---

[2] *Cleveland v. MidFirst Bank*, 335 Ga. App. 465, 465 (781 SE2d 577) (2016) (punctuation omitted).

[3] *Id.* (punctuation omitted).

[4] *Id.* (punctuation omitted).

[5] *Id.* (punctuation omitted).

the trial court's ruling on a motion to dismiss *de novo*.[6] With these guiding principles in mind, we turn now to the Nixons' specific claims of error.

1. The Nixons first argue that the trial court erred in granting the motion to dismiss on the basis that they lacked standing to maintain an action against Barber in the absence of an attorney-client relationship with him. Unfortunately, the court's summary order lacked any analysis to support the dismissal. Nevertheless, we may affirm a dismissal if it is right for any reason.[7] And here, as to Kathy and Bruce, the motion to dismiss was properly granted because they failed to state a claim upon which relief can be granted when they did not have an attorney-client relationship with Barber. For this same reason, Kathy and Bruce also lacked standing to bring a legal malpractice action against Barber.[8]

---

[6] *Id.* at 465-66.

[7] *See, e.g.*, *Bobick v. Cmty. & S. Bank*, 321 Ga. App. 855, 869-70 (4) (b) (743 SE2d 516) (2013) (affirming dismissal under the right-for-any-reason doctrine).

[8] *See Ga. Insurers Insolvency Pool v. Hulsey Envir. Servs., Inc.*, 293 Ga. 504, 505-06 (748 SE2d 380) (2013) (affirming grant of motion to dismiss when party lacked standing to bring suit); *cf. Dept. of Revenue v. Sawnee Electrical Membership Corp.*, 265 Ga. App. 320, 320-21 (593 SE2d 756) (2004) (holding that trial court erred in denying motion to dismiss when party lacked standing to bring suit). Standing, of course, is a prerequisite to the existence of subject-matter jurisdiction. *Blackmon v. Tenet Healthsystem Spalding, Inc.*, 284 Ga. 369, 371 (667 SE2d 348) (2008) ("The constitutional and procedural concept of 'standing' falls under the broad

5

In a legal-malpractice case, a plaintiff has the burden of proving the three elements of such an action: (1) employment of the defendant attorney (*i.e.*, the plaintiff had an attorney-client relationship with the attorney); (2) failure of the attorney to exercise ordinary care, skill, and diligence; and (3) that the attorney's negligence was the proximate cause of the plaintiff's damages.[9]

---

rubric of 'jurisdiction' in the general sense, and in any event, a plaintiff with standing is a prerequisite for the existence of subject matter jurisdiction."). And as we have previously explained, "[the] court's lack of subject-matter jurisdiction cannot be waived and may be raised at any time either in the trial court, in a collateral attack on a judgment, or in an appeal." *Ga. Dept. of Transp. v. Wyche*, 332 Ga. App. 596, 598 (1) n.7 (774 SE2d 169) (2015) (punctuation omitted); *accord Abushmais v. Erby*, 282 Ga. 619, 622 (3) (652 SE2d 549) (2007). Finally, the burden of proving "the interest necessary to demonstrate a particular party's standing is ordinarily placed on that party." *Dept. of Human Res. v. Allison*, 276 Ga. 175, 178 (575 SE2d 876) (2003); *see In the Interest of M. H.*, 247 Ga. App. 84, 85 (543 SE2d 390) (2000) ("The burden is on the defendant to show that he has standing to contest the alleged violation, i.e., that he has a legitimate expectation of privacy in the premises searched.").

[9] *See Carmichael v. Barham, Bennett, Miller & Stone*, 187 Ga. App. 494, 495 (370 SE2d 639) (1988) (listing the three elements and holding that the first element was not satisfied when there was no attorney-client relationship between the plaintiffs and defendant, notwithstanding that the plaintiffs paid the attorney's fees); *see also Oswell v. Nixon*, 275 Ga. App. 205, 207 (1) (620 SE2d 419) (2005) ("[T]he law is clear that to make out a case of legal malpractice, a lawyer-client relationship must exist between the plaintiff and the defendant attorney." (punctuation omitted)).

As to the first requirement, generally, an attorney-client relationship "must be demonstrated before a plaintiff may recover in a legal malpractice suit"[10] because such a relationship is "essential in establishing the element of duty that is necessary to every lawsuit based upon a theory of negligence."[11] Although attorney-client relationships are typically matters of express contract, such a relationship can also be implied from the parties' conduct.[12] And the employment of an attorney is sufficiently established when it is shown that "the advice or assistance of the attorney is sought and received in matters pertinent to his profession."[13] Additionally, while the payment of a fee is relevant to the inquiry and may in some circumstances be controlling,

> an attorney-client relationship may be found to exist [when] no fee is paid, and the payment of a fee does not necessarily demonstrate the existence of the relationship. All that is necessary is a "reasonable

---

[10] *Cleveland Campers, Inc. v. R. Thad McCormack, P.C.*, 280 Ga. App. 900, 903 (2) (635 SE2d 274) (2006) (punctuation omitted); *accord McKenna Long & Aldridge, LLP v. Keller*, 267 Ga. App. 171, 173 (1) (598 SE2d 892) (2004).

[11] *Cleveland Campers, Inc.*, 280 Ga. App. at 903 (2) (punctuation omitted); *accord Keller*, 267 Ga. App. at 173 (1).

[12] *Cleveland Campers, Inc.*, 280 Ga. App. at 903 (2); *Guillebeau v. Jenkins*, 182 Ga. App. 225, 229 (1) (355 SE2d 453) (1987).

[13] *Cleveland Campers, Inc.*, 280 Ga. App. at 903 (2) (punctuation omitted); *accord Guillebeau*, 182 Ga. App. at 229 (1).

belief" on the part of the would-be client that he or she was being represented by the attorney. A reasonable belief is one which is reasonably induced by representations or conduct on the part of the attorney.[14]

In support of their allegations that an attorney-client relationship was formed with Barber, Kathy and Bruce assert in their amended complaint that

> [a]lthough Defendants were counsel *of record* only to Hunter, they provided legal representation, assistance and advice directly to Mr. and Mrs. Nixon. Defendants were paid by the Nixons, took direction from the Nixons, communicated with and reported to the Nixons, engaged in strategy discussions with the Nixons and were ultimately fired by the Nixons. The Nixons employed Defendants, had an attorney-client relationship with Defendants and reasonably believed that Defendants were acting on their behalf as well as on behalf of Hunter.

But again, an attorney-client relationship cannot "be created unilaterally in the mind of a would-be client; a *reasonable* belief is required."[15] And here, the allegations of the complaint evince that all communications between Kathy, Bruce, and Barber were

---

[14] *Cleveland Campers, Inc.*, 280 Ga. App. at 903 (2) (punctuation omitted); *accord Calhoun v. Tapley*, 196 Ga. App. 318, 319 (395 SE2d 848) (1990).

[15] *Cleveland Campers, Inc.*, 280 Ga. App. at 904 (2) (punctuation omitted) (emphasis supplied); *accord Newberry v. Cotton States Mut. Ins. Co.*, 242 Ga. App. 784, 785 (1) (531 SE2d 362) (2000); *Guillebeau*, 182 Ga. App. at 231 (1).

made for the purpose of and related to Barber's representation of *Hunter* in defense against his criminal prosecution.

At the very outset of the complaint, in describing the nature of the action, the Nixons explain that it is "an action for professional malpractice arising from Defendants' improper handling of Robert Hunter Nixon's criminal defense" because Barber "failed to properly evaluate and defend Robert Hunter Nixon . . . ." The Nixons then continue to describe the nature of the action by alleging that Barber (1) made misrepresentations about the sentences faced by Hunter; (2) was unprepared at Hunter's sentencing hearing; (3) misinformed the family about his communications with the prosecution and efforts to obtain a better plea offer for Hunter "throughout his representation of Hunter"; and (4) failed "to properly represent Hunter Nixon" such that it "caused unnecessary delay[,] . . . substantial stress[,] and extreme mental anguish." Later in the complaint, in setting forth the factual basis for the claim of legal malpractice, the Nixons alleged that

- "Hunter retained [Barber] to represent him in his criminal defense."

- Barber discussed his representation of Hunter with the family.

- Barber recommended that the family obtain letters of Hunter's good character in advance of the sentencing hearing.

9

- Barber communicated with the family regarding the prosecution's plea offer, his efforts to obtain a better offer, and his recommendation that Hunter work with law enforcement in hopes of receiving a better offer.

- Barber communicated with the family about lining up speakers on Hunter's behalf at another sentencing hearing.

- Barber further informed the family and Hunter about a new plea offer, which "the Nixons declined," before Hunter agreed to continue working with law enforcement "against his parents' wishes" after Barber warned that Hunter would "serve time" by declining the offer.

- Barber inquired with the Nixons as to why Hunter stopped assisting law enforcement and warned Hunter and his family that Hunter could face prison if he did not continue to cooperate with the police.

- Barber was fired "as Hunter's counsel," and new counsel was hired for "Hunter's case."

The Nixons further alleged that Barber was negligent in (1) failing to notify the prosecution of Hunter's cooperation with law enforcement; (2) failing to present the trial court with letters of Hunter's good character; (3) making false statements and misrepresentations to the Nixons; (4) failing to "diligently defend and properly evaluate the case" and "properly analyze the likely sentence in the event Hunter was convicted"; (5) "overestimat[ing] the prosecutor's case and fail[ing] to effectively negotiate a plea bargain"; (6) being unprepared for Hunter's May 13, 2014 sentencing hearing; and (7) having a conflict of interest between his role as a defense attorney

10

and as a municipal-court judge. Finally, even the expert affidavit[16] in support of the Nixons' complaint alleges that Barber failed "to competently represent Robert Hunter Nixon in his criminal proceedings" and "negligently or intentionally mishandled Robert Hunter Nixon's criminal case."

The record, then, is clear. Aside from Barber's representation of Hunter and the efforts made on his behalf in the criminal proceeding (the success of which would have incidentally benefitted the Nixon family), Kathy and Bruce have not pleaded that Barber undertook any duty or made any promise specific to *them*.[17] Indeed, in

---

[16] *See* OCGA § 9-11-9.1 (a) (requiring that any complaint alleging professional malpractice must be accompanied by an expert affidavit setting forth "at least one negligent act or omission claimed to exist and the factual basis for each such claim").

[17] *See Fox v. White*, 215 SW3d 257, 262 (Mo. Ct. App. 2007) ("Certainly, had [the stepson] been acquitted or had [the attorney] in some other way succeeded in preserving his parental rights, other family members would have benefitted from that result. Merely acknowledging this fact, however, does not confer upon [the attorney] a duty to those family members. Such a duty could only be found in some sort of specific undertaking on behalf of those family members. Without pleading such an undertaking or promise, [the stepfather] has not pled that [the attorney] owed any such duty to [the stepfather]. No such undertaking or promise appears in the petition filed in this case."); *see also Crane v. Albertelli*, 264 Ga. App. 910, 910-11 (1) (592 SE2d 684) (2003) (holding that trial court properly dismissed legal-malpractice claim when no attorney-client relationship existed between defendant attorney and clients' husband/father because such a relationship does not exist "simply by virtue of [the husband/father's] personal relationship with [the attorney's] clients and [the husband/father's] personal concern about the outcome of their appeals").

reviewing the allegations of the complaint, and notwithstanding the additional allegations in the amended complaint and their payment of Barber's fees, Kathy and Bruce could not have *reasonably* believed that Barber represented *them* when all communications and representations were made in the course of (and regarded) Barber's representation of their *son* in defense against his criminal charges.[18] Thus, while it is certainly understandable that parents would be involved in and concerned with their child's defense against criminal prosecution, the person with the ultimate decision-making authority in such a proceeding—and the person whose liberty is actually at stake—is the one whose interests are represented by counsel.[19] Suffice it

_____

[18] *See Seals v. DeBose-Parent*, 99 So3d 72, 74 (La. Ct. App. 2012) (holding that, notwithstanding brother's payment of attorney's fees, brother "was entirely aware that he was retaining the appellee as counsel for his sister" for representation in her criminal prosecution and, thus, no attorney-client relationship existed between attorney and client's brother); *Fox*, 215 SW3d at 261-62 (holding that there was no attorney-client relationship between attorney and criminal defendant's stepfather who paid fees and engaged attorney to represent stepson because "[a]ll of the benefits that [the stepfather] alleges he expected to receive from the contract are benefits indirectly derived from [the stepson's] ultimate exoneration").

[19] *Cf. Spencer v. State*, 287 Ga. 434, 439 (4) (696 SE2d 617) (2010) (noting that the ultimate decision as to whether or not to testify rests with criminal defendant and not his counsel); *White v. State*, 287 Ga. 713, 721 (4) (a) (699 SE2d 291) (2010) ("It is without question that it is the defendant, not his attorney, who, after being provided informed legal advice, makes the ultimate decision about whether or not to plead guilty."); *Hendrix v. State*, 284 Ga. 420, 422 (2) (667 SE2d 597) (2008) ("Whether to waive a jury trial is a strategic decision to be made by an accused after consultation

12

to say, an attorney-client relationship is personal, not vicarious.[20] Accordingly, Kathy

and Bruce failed to state a claim upon which relief could be granted and, likewise,

lacked standing to bring a legal-malpractice action against Barber in their individual

capacities.[21] Therefore, the trial court properly dismissed the action as to Kathy and

Bruce.[22]

2. Finally, as to the Estate, the Nixons assert that the trial court erred in

granting the motion to dismiss based upon Barber's argument below that they "must

with counsel." (punctuation omitted)).

[20] *Crane*, 264 Ga. App. at 910 (1); *see Zielinski v. Clorox Co.*, 270 Ga. 38, 40-42 (2) (504 SE2d 683) (1998) (holding that plaintiff who approached attorney in representative capacity on behalf of a corporation failed to establish the existence of a personal attorney-client relationship with the attorney).

[21] *See Fortson v. Hotard*, 299 Ga. App. 800, 802 (2) (a) (684 SE2d 18) (2009) (holding that complaint was properly dismissed when plaintiffs failed to establish first element of legal malpractice—employment of the attorney); *Oswell*, 275 Ga. App. at 207 (1) (holding that complaint was properly dismissed when plaintiff failed to allege an attorney–client relationship with the defendant); *Crane*, 264 Ga. App. at 910-11 (1) (holding that trial court properly dismissed legal-malpractice claim when no attorney–client relationship existed between defendant attorney and clients' husband/father); *cf. Rhone v. Bolden*, 270 Ga. App. 712, 716 (4) (a) (608 SE2d 22) (2004) (holding that trial court erred in denying attorneys' motion for summary judgment as to legal-malpractice claim when evidence demanded a finding that no attorney–client relationship existed between plaintiff and defendants).

[22] *See, e.g.*, *Bobick*, 321 Ga. App. at 869-70 (4) (b) (affirming dismissal under right-for-any-reason doctrine).

13

demonstrate as a factual prerequisite to proving their case[ ] that Hunter was factually innocent of the crimes which he was charged with." But we need not reach the propriety of Barber's contention and the trial court's apparent grant of the motion to dismiss on this ground because the Nixons abandoned this enumeration of error by failing to provide citation to authority in support of same.[23]

---

[23] *See Blanton v. State*, 324 Ga. App. 610, 615 (2) (a) n.10 (751 SE2d 431) (2013) (finding that appellant abandoned a claim by failing to cite any authority to support it); *Clarke v. State*, 317 Ga. App. 471, 475 (1) (d) (731 SE2d 100) (2012) (holding that argument was waived by appellant's failure to cite legal authority in support thereof); COURT OF APPEALS R. 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned."). We note that, had this enumeration not been abandoned, this would have been an issue of first impression in Georgia, and it is a question that has resulted in a split of authority across the country. *See generally* Meredith J. Duncan, *Criminal Malpractice: A Lawyer's Holiday*, 37 GA. L. REV. 1251, 1267-68 (III) (A) (2003) (noting that when a legal-malpractice plaintiff is a "former criminal defendant suing his former criminal defense attorney for negligence, *many* jurisdictions add additional elements to those traditionally required," and that in those jurisdictions, "the plaintiff is required to prove that he has been exonerated or has otherwise obtained postconviction relief from the charged offense," and further noting that in several jurisdictions, "the claimant must further prove that he was actually innocent of the charges for which he has obtained that relief" (emphasis supplied)); Kevin Bennardo, Note, *A Defense Bar: The "Proof of Innocence" Requirement in Criminal Malpractice Claims*, 5 OHIO ST. J. CRIM. L. 341, 342-43 (2007) ("The majority of jurisdictions require that criminal malpractice plaintiffs prove attainment of post-conviction relief, their actual innocence, or both to successfully bring a criminal malpractice lawsuit. A minority of jurisdictions require no showing of innocence in litigating such a malpractice claim[.]"); Cort Thomas, Note, *Criminal Malpractice: Avoiding the Chutes & Using the Ladders*, 37 AM. J. CRIM. L. 331, 343-44 (III) (A) (1) (2010) (discussing the majority and minority views across the country, and noting

For all of the foregoing reasons, we affirm the trial court's grant of the motion to dismiss.

*Judgment affirmed. Reese and Bethel, JJ., concur.*

---

that the majority of jurisdictions "require that a criminal malpractice plaintiff prove either legal innocence, factual innocence, or both before she may even bring a criminal malpractice claim in the first place" while the minority of jurisdictions "choos[e] not to enforce an innocence requirement at all" and "generally reject the litany of policy considerations offered for each requirement").