**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 20, 2024**

# In the Court of Appeals of Georgia

A23A1733. COX-OTT et al. v. BARNES & THORNBURG, LLP, et al.

MARKLE, Judge.

After Cynthia Cox-Ott ("Cynthia"), individually and as trustee of her family trust, was defrauded when she purchased a life insurance policy, she hired attorney James J. Leonard and the law firm of Barnes & Thornburg, LLP (collectively "Leonard"), to file suit against the insurance company. The federal district court dismissed the complaint, and Cynthia then filed suit against Leonard, asserting claims for legal malpractice and breach of contract. The trial court granted summary judgment in Leonard's favor, and Cynthia now appeals, arguing the trial court erred by finding that (1) there was no attorney-client relationship between Leonard and Cynthia, individually; (2) Leonard's decisions regarding the suit were protected by

judgmental immunity; (3) Leonard was not negligent in conceding delivery of the insurance policy, and by not considering Leonard's failure to plead facts showing the insurance company's ongoing fraud and concealment in regard to delivery of the policy; and (4) by failing to consider Leonard's decision not to amend the complaint in light of the insurance company's motion to dismiss. After a thorough review of the record, we affirm.

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Unique Auto Sales v. Dunwody Ins. Agency*, 369 Ga. App. 50, 50-51 (891 SE2d 534) (2023).

So viewed, the record shows that Cynthia and Claude Ott ("Claude") divorced in 2005. As part of the divorce settlement, Cynthia obtained a $4 million dollar life insurance policy on Claude's life, which she purchased through Armen Hovakimian,

an agent with AXA Equitable Life Insurance Company and AXA Advisors, Inc. (collectively "AXA"), both based in New York. Cynthia hired an attorney in New York, Lawrence Peck, to draft the C & C Family Trust 04/04/05 (the "Trust") to hold the life insurance policy, and she listed herself and her mother, Patricia Cox, as trustees.

Claude had disclosed on the insurance application policy that he was a smoker. However, AXA presented to Cynthia an illustration for a non-smoker policy, reflecting an initial premium of $165,800 and guaranteed annual premiums of $88,000. The illustration indicated that it was "not part of the life insurance policy or contract"; however, Cynthia believed it was the actual policy and that her premiums would remain the same until Ott reached the age of 90. AXA ultimately issued Cynthia a flexible premium universal life insurance policy for tobacco users at a much higher premium.

The policy was delivered to Peck's home address in New Jersey. Peck averred he did not know why his home address would have been given to AXA for delivery; he did not recall signing the delivery receipt; and he further admitted he was not

authorized to receive the policy on the Trust's behalf. Cynthia claimed that she did not receive the policy.[1] Meanwhile, AXA sent annual notices to the Trust concerning the premiums, indicating that the policy was a flexible premium universal life insurance policy.

Cynthia paid the initial $165,000 premium on the policy, and she made annual premium payments of $88,000 in compliance with the notices AXA sent. The insurance agent, however, failed to inform Cynthia that her payments did not cover the premiums actually charged, and, in 2008, AXA sent her a premium notice of $165,000. Cynthia contacted the agent concerning the premium notice and was advised that the notice was in error, that the proper premium was $88,000, and AXA sent her a new invoice.

In 2012, Cynthia contacted AXA to request a copy of the policy, and was referred to Mike Roth, who replaced Hovakimian after he was terminated, and who provided her with a copy. At that time, Cynthia discovered discrepancies in the policies.

---

[1] However, in early 2015, Cynthia had sent Leonard an email, admitting that she had opened a safe she had not used in many years, and found a copy of the 2005 policy AXA had sent her.

Due to her concerns regarding the different policies, Cynthia consulted with New York attorneys and a financial adviser in Georgia, who referred her to Leonard. When Cynthia met with Leonard to discuss the case, Leonard had her sign an engagement letter for Leonard and Barnes & Thornburg, LLP to represent the Trust. Leonard advised Cynthia that he had previously represented AXA in a lawsuit, but that there was no conflict of interest, and that his familiarity with AXA would be helpful to her case. Leonard then began requesting information from AXA concerning the policy, and ultimately learned that AXA's position was that the policy was a flexible premium-paying contract with no guaranteed consistent premiums and no age by which the policy would be paid up.

In late 2013, Leonard sent Cynthia a letter describing two possible ways to proceed: she could either attempt to negotiate with AXA for a different life insurance product, or file suit. He also discussed the possibility of AXA agreeing to rescind the policy and return all her premium payments with interest. In subsequent emails to Cynthia, Leonard again reiterated the plan to seek reformation of the policy, and he also recommended that the claims be pursued under Georgia law rather than New York law because New York courts are not as favorable to policyholders.

In March 2014, Leonard filed suit against AXA on behalf of the Trust, asserting claims for fraud, negligent misrepresentation, and reformation of the insurance policy.[2] AXA removed the case to federal district court, and moved to dismiss the complaint, arguing, inter alia, that the Trust had not pled actionable fraud, and that the policy's merger clause barred the Trust's claims. In response, the Trust argued its claims were not affected by the merger clause, and that it pled fraud with sufficient particularity to withstand AXA's motion to dismiss, but that, if the Court should determine it had not met the heightened pleading standard under Federal Rule of Civil Procedure Rule 9 (b),[3] the Trust sought leave to amend its complaint rather than dismissal of its claims. The district court granted AXA's motion.[4] The district court

---

[2] The underlying complaint did not assert a claim for rescision, or set out facts establishing that Cynthia was prevented from reading the policy. Nor did it plead fraudulent acts by AXA after the policy was issued. The complaint also did not include claims for breach of contract or declaratory relief, nor a claim on behalf of Cynthia individually for recoupment of the premiums she personally paid.

[3] Federal Rule of Civil Procedure Rule 9 (b) provides that: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

[4] After the case was dismissed, Cynthia stopped paying the policy premiums and the policy lapsed in early 2018. Claude died in May 2022 at the age of 84.

specifically held that the merger doctrine barred any attempt to assert a fraud claim against AXA, and that the Trust pled no facts suggesting that discovery would allow it to show justifiable reliance; neither the complaint nor other pleadings suggested the Trust was precluded from reading the policy; and the Trust's reliance on AXA's representations that the annual premium would remain a flat rate was unreasonable because the policy unambiguously contradicts these statements. It further held that, by seeking reformation, the Trust affirmed the policy and was thus bound by the policy's terms, subject to any contract-based defenses.

The 11th Circuit Court of Appeals affirmed the dismissal, concluding that the district court did not abuse its discretion by denying the Trust leave to amend its complaint because the Trust failed to properly raise the issue, failed to attach a copy of its proposed amendment to its brief in opposition to AXA's motion to dismiss, or to describe the substance of its amendment.

In June 2019, Cynthia obtained new counsel and filed suit, individually and on behalf of the Trust, against Leonard for professional negligence, breach of contract, and litigation expenses under OCGA § 13-6-11. In the complaint, Cynthia alleged that Leonard violated the standard of care, and she submitted the expert affidavit of

William Brent Ney pursuant to OCGA § 9-11-9.1, setting forth the violations of the standard of care for attorneys in Georgia. Cynthia also obtained the deposition testimony of another attorney, Ed Garland, who testified as a fact witness and averred that it is the attorney's responsibility, not the client's, to discern what claims to assert, and that Leonard could have pled, in the alternative, to rescind the policy rather than to affirm it. Cynthia also provided the expert testimony of attorney Bruce Brown, who averred that he believed there to have been an attorney-client relationship between Cynthia and Leonard because Cynthia reasonably believed that her individual interests were being represented.

Leonard subsequently moved to dismiss Cynthia's breach of contract claim, which the trial court denied. Following discovery, Leonard then moved for summary judgment, arguing that Cynthia's legal malpractice claims fail as a matter of law because Cynthia cannot prove negligence as Leonard's actions were based on his professional judgment; Leonard did not represent Cynthia individually in the underlying suit; Leonard breached no standard of care which was the proximate cause of Cynthia's or the Trust's injuries; Cynthia has not established damages; and the

breach of contract claim is duplicative of the professional malpractice claim. Following a hearing, the trial court granted Leonard's motion, and this appeal followed.

Before addressing Cynthia's arguments, we must first set forth the relevant law for professional malpractice claims.

> To prevail on a legal malpractice claim, a client must prove that (1) she employed the defendant attorney; (2) the attorney failed to exercise ordinary care, skill, and diligence; and (3) this failure was the proximate cause of damages to the client. With respect to the 'ordinary care, skill and diligence' element, the law imposes upon persons performing professional services the duty to exercise a reasonable degree of skill and care, as determined by the degree of skill and care ordinarily employed by their respective professions under similar conditions and like surrounding circumstances.

(Citations and punctuation omitted.) *Rollins v. Smith*, 353 Ga. App. 209, 211-212 (2) (836 SE2d 585) (2019); see also *Mosera v. Davis*, 306 Ga. App. 226, 230 (2) (701 SE2d 864) (2010); *Allen v. Lefkoff, Duncan, Grimes & Dermer*, 265 Ga. 374, 375 (2) (a) (453 SE2d 719) (1995). As to the second element,

> [i]n a legal malpractice case, the presumption is that the legal services were performed in an ordinarily skillful manner. This presumption remains with the attorney until the presumption is rebutted by expert legal testimony; otherwise, the grant of summary judgment in favor of

> the attorney is proper. Should this presumption be rebutted by expert legal testimony there is presented for the jury a question of fact.

(Citation and punctuation omitted.) *Johnson v. Butcher*, 165 Ga. App. 469, 471 (301 SE2d 665) (1983); see also *Ehlers v. Schwall & Heuett*, 177 Ga. App. 548, 551 (340 SE2d 207) (1986).

> Nevertheless,

> Georgia's doctrine of judgmental immunity protects an attorney from liability for acts and omissions in the conduct of litigation which are based on an honest exercise of professional judgment. The doctrine recognizes that the tactical decisions made during the course of litigation require, by their nature, that the attorney be given a great deal of discretion.

(Citations and punctuation omitted.) *Rollins*, 353 Ga. App. at 214 (2) (a); see also *Hudson v. Windholz*, 202 Ga. App. 882, 886 (3) (416 SE2d 120) (1992).

> There can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment. This is a sound rule. Otherwise every losing litigant would be able to sue his attorney if he could find another attorney who was willing to second guess the decisions of the first attorney with the advantage of hindsight. If this were permitted, . . . the original trial would become a 'play within a play' at the malpractice trial.

10

(Citation and punctuation omitted.) *Hudson*, 202 Ga. App. at 886 (3). Finally, as to the third element of a legal malpractice claim,

> [p]roximate cause in a malpractice action requires a plaintiff to demonstrate that but for the attorney's error, the outcome would have been different; any lesser requirement would invite speculation and conjecture. . . . The defendant attorney is entitled to summary judgment if he . . . shows that there is an absence of proof adduced by the client on the issue of proximate cause.

*Rollins*, 353 Ga. App. at 211-212 (2); *Mosera*, 306 Ga. App. at 230-231 (2). With these principles in mind, we examine each of Cynthia's arguments, finding no merit to any of them.

1. Cynthia first contends that the trial court erred by finding that she, individually, had no reasonable belief of an attorney-client relationship with Leonard because this was a jury question. We discern no error.

As to the first element in a legal malpractice claim,

> a plaintiff has the burden of proving . . . employment of the defendant attorney (i.e., the plaintiff had an attorney-client relationship with the attorney)[.] . . . generally, an attorney-client relationship must be demonstrated before a plaintiff may recover in a legal malpractice suit because such a relationship is essential in establishing the element of duty that is necessary to every lawsuit based upon a theory of negligence.

11

Although attorney-client relationships are typically matters of express contract, such a relationship can also be implied from the parties' conduct.

(Citations and punctuation omitted.) *Estate of Nixon v. Barber*, 340 Ga. App. 103, 105-106 (1) (796 SE2d 489) (2017). Cynthia asserts she believed Leonard represented her individually because she personally signed the representation agreement; Leonard communicated solely with her, and the Trust was merely a vehicle to hold the policy; and she personally paid all invoices for Leonard's services. However, even if Cynthia thought Leonard represented her personally, Cynthia's "state of mind, unless reasonably induced by representations or the conduct of [Leonard], was not sufficient to create a confidential relationship." (Citation and punctuation omitted.) *Guillebeau v. Jenkins*, 182 Ga. App. 225, 230 (1) (355 SE2d 453) (1987).

Here, the record clearly shows that Leonard represented the Trust and not Cynthia individually. Cynthia signed an engagement letter for Leonard and Barnes & Thornburg, LLP to represent the Trust. In fact, the engagement letter explicitly indicated that "[o]ur only client in our present representation is the C&C Family Trust." Additionally, Cynthia's expert, Brown, admitted that the engagement letter, on its face, made clear that the Trust was Leonard's only client. See *Sullivan v. Quisc,*

12

*Inc.*, 207 Ga. App. 114 (427 SE2d 86) (1993) ("The conclusion of an expert witness on the ultimate issue of fact does not necessarily create an issue for jury determination."); see also *Ferrell v. United Water Svcs. Unlimited Atlanta*, 271 Ga. App. 887, 890 (611 SE2d 126) (2005).

Moreover, Cynthia was not named individually as a party to the underlying lawsuit, but rather was only named as trustee for the Trust, and the complaint asserts no individual claims on Cynthia's behalf. And, as the trial court noted, Cynthia asserts no individual claims in the current complaint outside of those asserted on behalf of the Trust. The fact that Cynthia made the insurance payments, communicated with Leonard, and paid Leonard's legal fees is consistent with her role as the trustee for the Trust.[5] "It is axiomatic that a trust can act only through its trustees." *PricewaterhouseCoopers v. Bassett*, 293 Ga. App. 274, 277 (1) (666 SE2d 721) (2008); see also *Leone Hall Price Foundation v. Baker*, 276 Ga. 318 (1) (577 SE2d 779) (2003). Accordingly, based on this record, Cynthia has failed to meet her burden of

---

[5] We do not consider Cynthia's argument raised for the first time in her reply brief that she had personal claims against AXA for fraud, negligent misrepresentation, money had and received, and unjust enrichment. See *Stewart v. Johnson*, 358 Ga. App. 813, 814 (856 SE2d 401) (2021); see also *Moore v. Lovein Funeral Home*, 358 Ga. App. 10, 12, n. 5 (852 SE2d 876) (2020).

establishing an attorney-client relationship. See *Estate of Nixon*, 340 Ga. App. at 105-106 (1).

2. In related arguments, Cynthia next argues that the trial court erred by determining that she had not established the professional negligence and causation elements to maintain a malpractice claim. Specifically, Cynthia asserts that the trial court erred by (a) finding that the doctrine of judgmental immunity protected Leonard's decision to (i) proceed under Georgia law rather than New York law; and (ii) seek reformation of the insurance contract rather than rescission; and (b) finding that Leonard was not negligent in conceding delivery of the insurance policy, and by failing to assert facts showing whether Cynthia had received and read the policy.[6] We discern no error.

(a) *Judgmental immunity*.

---

[6] Cynthia also argues on appeal that the trial court failed to consider that Leonard had a conflict of interest while representing her because he also represented AXA in a previous lawsuit. She further contends that, relying on *Paul v. Smith, Gambrell & Russell*, 267 Ga. App. 107, 111-112 (1) (599 SE2d 206) (2004), when a conflict of interest is raised when a judgmental immunity is also raised as a defense, a jury issue arises as to judgmental immunity. Although Cynthia raised the alleged conflict of interest in her response to Leonard's motion for summary judgment, she failed to show how any alleged conflict of interest bears on Leonard's decision to represent the Trust, nor has she shown any damages caused by an alleged conflict of interest. As such, this argument is unavailing.

14

(i) Cynthia argues that the doctrine of judgmental immunity does not apply in this case because there is no evidence, particularly no billing records, showing Leonard considered or analyzed choice of law or researched key issues under New York law, and that her expert opined that, based on the specific issues presented by the merger clause, applying New York law would have been more advantageous. These arguments are without merit.

Here, the trial court specifically considered and found that Leonard was a seasoned litigator with experience litigating insurance issues in both Georgia and New York, and that it was evident from the record he engaged in an honest exercise of professional judgment in applying Georgia law.[7] Leonard was not required to show, through billing statements or otherwise, that he researched the choice of law issue in order to be protected under the judgmental immunity doctrine. See *Littleton v. Stone*, 231 Ga. App. 150, 153 (2) (a) (497 SE2d 684) (1998). Leonard testified that he was an experienced litigator with over 20 years of expertise in assisting policyholders against insurance companies. He also testified that, based on his experience and judgment and

---

[7] The trial court also found that Leonard engaged in an honest exercise of professional judgment in choosing to bring suit in Georgia; however, Cynthia does not challenge on appeal the trial court's ruling as to Leonard's choice of forum.

15

having tried cases in New York, Georgia law was more favorable than New York law, particularly where his client, the Trust, was a Georgia trust; that he believed the Georgia court would apply Georgia law if it found the policy was delivered there; and that New York courts are generally more favorable to the insurance companies. Based on Leonard's expertise and experience, his decision to proceed under Georgia law was an informed decision protected under the judgmental immunity doctrine.

> [A]ttorneys are not ensurers of the results of their efforts on behalf of clients. They will not be held to have breached applicable standards of care except in cases of wilful or negligent failure to apply well-known and accepted legal principles and procedures, either because they are ignorant of them, or because they have failed to act reasonably to protect clients' interests. Unless the law is so well settled, clear, and widely recognized, an attorney acting in good faith and to the best of his knowledge will be insulated from liability for adverse results.

(Citations and punctuation omitted.) *Littleton*, 231 Ga. App. at 153 (2) (a) (affirming summary judgment in attorney's favor in malpractice action where attorney admitted he did not read or re-read applicable statute but testified he was aware of it and considered it); see also *Rimert v. Meriwether & Tharp*, 361 Ga. App. 589, 597 (6) (865 SE2d 199) (2021) ("As the legal profession is at best an inexact science, a breach of

duty arises only when the relevant, i.e., legal principles or procedures are well settled and their application clearly demanded, and the failure to apply them apparent.").

Moreover, Cynthia's expert's opinion that New York law would have been more advantageous than Georgia law due to specific issues presented by the merger clause does not establish that Leonard breached the standard of care. The record shows that Leonard considered Georgia law versus New York law, and he explained to Cynthia the benefits of filing suit under Georgia law and having a "home court" advantage. Indeed, in Cynthia's response before the district court to AXA's motion to dismiss in the underlying suit, Leonard argued what he believed to be a viable outcome — that under Georgia law a merger clause would not bar Cynthia's fraud claim against AXA if the record showed that she relied upon misrepresentations in the contract itself. Albeit unsuccessful, Leonard's argument below demonstrates the type of tactical decision made during the course of litigation that the judgmental immunity doctrine is designed to protect. *Rollins*, 353 Ga. App. at 214 (2) (a); see also *Mosera*, 306 Ga. App. at 232 (2); *Hudson*, 202 Ga. App. at 886 (3). As such, Cynthia's expert's opinion that New York law would have been more advantageous amounts to nothing more than second guessing Leonard's decision to proceed under Georgia law, and

17

Leonard cannot be held liable for an honest exercise of professional judgment. *Hudson*, 202 Ga. App. at 886 (3).

Additionally, although Cynthia's expert opined that New York law would have been more favorable than Georgia law on the merger issue, Cynthia fails to show that, but for Leonard's decision to proceed under Georgia law, the outcome of her case would have been different. As stated above, "proximate cause in a malpractice action requires a plaintiff to demonstrate that but for the attorney's error, the outcome would have been different." *Rollins*, 353 Ga. App. at 212 (2); see also *Mosera*, 306 Ga. App. at 230-231 (2). Here, Cynthia merely speculates that New York law would have been more advantageous and fails to definitively show that New York law would have even applied in this case, let alone that the suit would have been successful under New York law. Speculation and conjecture are insufficient to raise a question of fact on the issue of proximate cause, and thus, without more, Leonard is entitled to summary judgment. *Rollins*, 353 Ga. App. at 212 (2); see also *Mosera*, 306 Ga. App. at 230-231 (2). Accordingly, Cynthia's argument fails on this issue.

(ii) *Reformation vs. Rescission*.

Cynthia argues that Leonard was not entitled to judgmental immunity for electing to assert a reformation claim rather than a rescission claim. For the same reasons discussed above, Cynthia cannot show that Leonard breached the standard of care.

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." (Citations and punctuation omitted.) *Lehman v. Keller*, 297 Ga. App. 371, 374 (2) (677 SE2d 415) (2009); see also *Weinstock v. Novare Group*, 309 Ga. App. 351, 354 (1) (b) (710 SE2d 150) (2011).

First, Cynthia contends that Leonard never discussed with her the possibility of asserting a rescission claim. However, this assertion is belied by the record. In her deposition, Cynthia admitted that her goal for the Trust was to acquire the policy she believed she had purchased. Cynthia testified that "I'm holding up to my end of what I purchased. They need to do the same." In this regard, Leonard sent a letter to Cynthia, in which he set forth two possible ways to proceed in the case: she could either attempt to negotiate with AXA for a different life insurance product, i. e.

reformation of the policy, and he discussed the possibility of AXA agreeing to rescind the policy and return all her premium payments with interest, but that to get to that point in the litigation would prove costly. In subsequent emails to Cynthia, Leonard again reiterated the plan to seek reformation of the policy. Thus, it is clear from the record that Leonard discussed the alternatives with Cynthia, ascertained the goals of the Trust, and proceeded according to those goals as articulated by Cynthia.

Cynthia also contends there was no billing entry or other evidence indicating that Leonard considered rescission prior to filing suit. As discussed above, such evidence is not required in order to be protected under the judgmental immunity doctrine. *Littleton*, 231 Ga. App. at 153 (2) (a).

Next, Cynthia's expert opined that Leonard should have asserted a claim for rescission, which, if pled under either Georgia or New York law, would have survived a motion to dismiss. However, the expert also testified that he would need to do more research on whether both rescission and reformation could have been pled in the complaint, but that, admittedly, reformation (under New York Law) would have been the best avenue to pursue in light of the Trust's goal to obtain the policy on the terms Cynthia thought she had bargained for. But again, Cynthia's expert's opinion on this

issue amounts to nothing more than second-guessing Leonard's decision to proceed with reformation rather than rescission, and Leonard cannot be held liable for an honest exercise of professional judgment. *Hudson*, 202 Ga. App. at 886 (3).

Finally, Cynthia fails to show that, but for Leonard's decision to proceed with a reformation claim, the outcome of her case would have been different. *Rollins*, 353 Ga. App. at 212 (2); see also *Mosera*, 306 Ga. App. at 230-231 (2). With a rescission claim, Cynthia would still be faced with the difficulty of overcoming the reasonable reliance issue as articulated by the district court, resulting in the dismissal of the case.[8] Admittedly, Cynthia did not even review her policy between 2005, when it was issued, and 2012, when she first requested a copy of the policy after discovering a discrepancy in the premium amounts. Cynthia's lack of diligence in this regard is an impediment to a successful rescission claim. *Lehman*, 297 Ga. App. at 374 (2). Moreover, Cynthia's argument ignores that the right to rescind is waived if it is not exercised promptly. "Waiver [of the right to rescind] generally is found where the intent to

[8] The district court specifically held that "the trust has pleaded no facts suggesting that discovery could permit it to show justifiable reliance. Nothing in its complaint or opposition brief suggests that the trust was precluded from reading the policy[;]" and that the trust's reliance on "AXA's representations that the annual premium would remain flat . . . is unreasonable as a matter of law because the policy unambiguously contradicts these statements."

rescind is not asserted in a timely fashion. The party asserting rescission must announce his intent to do so as soon as the facts underlying the claim are known." (Citations and punctuation omitted.) Id.

As such, the record reflects that Leonard did not breach the standard of care in asserting a reformation claim rather than a rescission claim, and Cynthia's argument fails on this point as well.

(b) *Delivery of policy and AXA's alleged ongoing fraud and concealment.*

Cynthia next argues that Leonard committed professional malpractice by conceding delivery of the insurance policy and by failing to assert facts showing whether Cynthia obtained or read the policy. Specifically, Cynthia contends there is evidence that AXA prevented her from reading the policy by not formally providing her with a copy and by delivering the policy to an unauthorized person and residence. She also argues that, under New York law, her alleged failure to read the policy would not have barred her claim, but rather goes toward comparative negligence. We discern no error.

First, Cynthia contends that Leonard breached the standard of care for conceding delivery of the policy. In support thereof, Cynthia relies on the testimony

of her expert, who opined that the circumstances surrounding delivery of the policy and conceding the policy was delivered was a "serious mistake"; that in order to survive a motion to dismiss, Leonard should have asserted facts in the underlying case showing Cynthia had not received the policy; and that there was no evidence Cynthia received the policy. These contentions are belied by the record and are without merit.

Cynthia's expert asserted that Leonard should have known at the time of filing the underlying complaint of the circumstances surrounding delivery of the policy to Peck, and yet he further asserted that "zero" level of knowledge by Leonard would have been necessary for him to challenge delivery as improper in the underlying action. Neither Cynthia nor her expert points to any evidence showing that Leonard knew or should have known that delivery of the policy was an issue in the underlying suit. Early in the underlying litigation, Leonard requested and received a copy of the policy and the delivery receipt. Additionally, Cynthia admitted that she had requested a copy of the policy, and further admitted she had a copy of it in 2005. Therefore, there is no reasonable basis for Cynthia's expert's assertion that Leonard knew or should have known there was an issue regarding delivery of the policy, and his suggestion that Leonard should have pled those facts is unfounded. Thus, the

presumption that Leonard acted in an ordinarily skillful manner in this regard, based on the knowledge available to him at the time of filing suit and during the ensuing litigation, has not been properly rebutted by expert testimony. *Johnson*, 165 Ga. App. at 471; see also *Ehlers*, 177 Ga. App. at 551.

Cynthia also asserts that the record shows AXA prevented her from reading the policy. This argument, too, is without merit. As the trial court correctly found, Cynthia, as the trustee, had an obligation to obtain and review the policy, and she failed to timely request a copy of the policy and admittedly never read the policy; thus, she would not have prevailed in that litigation.

> In general, an insured has an obligation to read and examine an insurance policy to determine whether the coverage desired has been furnished. If an examination of the policy would have made it readily apparent that the desired coverage was not issued, the policyholder's failure to examine the policy bars recovery against the insurer or its agent for negligent failure to provide coverage. . . . [I]nsureds are charged with knowledge of the insurance policy's contents, and are bound by those contents even if they do not have physical possession of the policy. . . . Insured persons under an insurance policy are presumed to know its conditions if they intend to rely upon its benefits, or else they must find out those conditions. . . . Under Georgia law, an insured without a copy of the policy must make an effort to ascertain the policy's terms.]

(Citations and punctuation omitted.) *Martin v. Chasteen*, 354 Ga. App. 518, 519-520 (2) (a) (841 SE2d 157) (2020).

Here, Cynthia admitted she did not review her policy. Thus, even if Leonard had argued improper delivery of the policy, Cynthia would not have been relieved of her obligation to obtain and read the policy. *Martin*, 354 Ga. App. at 519-520 (2) (a). This outcome would remain the same even under New York law. *Ciaramella v. State Farm Ins. Co.*, 709 N.Y.S.2d 296, 297 (2000) ("plaintiff as the policy holder is conclusively presumed to know its contents and to assent to them") (citation omitted); see also *Roumi v. Guardian Life Ins. Co. of America*, 142 N.Y.S.3d 571, 574 (2021) ("A plaintiff is expected to exercise ordinary diligence and may not claim to have reasonably relied on a defendant's representations or silence where [she] has means available to [her] of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation") (citation omitted). Accordingly, this argument lacks merit.

3. Finally, Cynthia contends the trial court erred by not addressing whether Leonard was negligent in failing to amend the complaint against the insurance company in response to its motion to dismiss.[9] We discern no error.

Despite Cynthia's assertion that the trial court did not address the failure to amend, we conclude that the trial court's rejection of this argument was implicit in its ruling that Cynthia would not have prevailed on the issue of policy delivery or on the rescission claim. *Massey v. State Farm Fire and Cas. Co.*, 363 Ga. App. 588, 592, n. 4 (871 SE2d 685) (2022) ("Although the trial court did not expressly address Massey's claim that State Farm breached its 'duty of fair dealings,' the court implicitly rejected that claim when it granted State Farm's motion for summary judgment in full."). Moreover, the trial court is not required to issue findings of fact and conclusions of law when ruling on a motion for summary judgment, and thus it does not err in

---

[9] Cynthia also alleges, in a single paragraph absent any meaningful argument or citation to authority, that Leonard breached the contract with Cynthia and the Trust, and further appears to suggest that, because questions of fact remain on this issue, the trial court erred by granting summary judgment to Leonard. The trial court specifically found that Cynthia's breach of contract claim raised the same allegations as her professional negligence claim, and therefore the breach of contract claim was duplicative. However, because Cynthia failed to support this allegation with argument and citation to authority, this argument is abandoned. See Court of Appeals Rule 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation to authority or argument may be deemed abandoned.").

omitting them. *Kuruvila v. Mulcahy*, 264 Ga. App. 626 (1) (591 SE2d 491) (2003).

Accordingly, this argument is without merit as well.[10]

*Judgment affirmed. McFadden, P. J., and Brown, J., concur.*

---

[10] Leonard urges the Court to make clear that punitive damages cannot be recovered in this action. In so arguing, Leonard asserts that in response to interrogatories in this action, Cynthia asserted that, had the underlying action against AXA been successful, it would have resulted in $10 million in punitive damages, and she sought to recover same from Leonard. However, Leonard has not filed a cross-appeal, and he raises this argument for the first time in response to Cynthia's appeal; thus, it is not an issue on which the trial court ruled and we decline to address it. *Cockerham v. Cockerham*, 359 Ga. App. 891, 893 (1) (860 SE2d 163) (2021).