**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 4, 2026

# In the Court of Appeals of Georgia

A26A0506. WASHINGTON v. WASHINGTON.

MERCIER, Judge.

Shani Washington ("Mother") and Jermel Washington ("Father"), who share one minor child, N. W., were divorced in 2016, and Father was given primary physical custody of N. W. Mother later filed a motion to modify custody, which the trial court denied in a February 2024 order, but it modified the parenting plan.

In August 2024, Father filed a motion for contempt asserting, inter alia, that Mother had failed to follow the February 2024 order regarding exchange locations for non-school days. The trial court found Mother in civil contempt of the February 2024 order and awarded Father attorney fees under OCGA § 19-6-2. Mother filed this pro se appeal of the trial court's order, arguing that it erred by finding her in contempt,

that her due process rights were violated, that the trial court erred by excluding evidence, that the award of attorney fees was improper, that the order was improper and that cumulative error required reversal.[1] As Mother has failed to show error, we affirm the trial court's order.[2]

Although the parties shared joint legal custody of N. W., the trial court awarded primary physical custody to Father and visitation to Mother. The parenting plan provided that non-school day exchanges of custody would occur at the Vinings Vintage Clubhouse or Mother's house.

---

[1] As an initial matter, we are troubled by Mother's citation to fictitious cases and fictitious quotations throughout her appellate brief. "Such 'hallucinated' cases are typically a hallmark of the irresponsible use of regenerative artificial intelligence (A.I.) in legal drafting." *Slay v. Ross*, 379 Ga. App. 1, 1 (927 SE2d 569) (2026). While Mother is pro se, she is nonetheless required to follow the rules of this Court, and we caution her that any future filings in this Court containing fictitious cases and/or fictitious quotations may result in the imposition of sanctions against her. See Court of Appeals Rule 7(e)(2) ("The panel of the Court ruling on a case, with or without motion, may by majority vote to impose a penalty not to exceed $10,000 against any party and/or a party's counsel in any civil case in which there is a direct appeal, application for discretionary appeal, application for interlocutory appeal, or motion that is determined to be frivolous."); *Modi v. India-Am. Cultural Ass'n*, 367 Ga. App. 572, 574(2) (886 SE2d 378) (2023) ("Although [Appellant] is proceeding pro se, [she] is not relieved of [her] obligation to conform to this Court's rules.") (quotation marks omitted).

[2] As we have jurisdiction of this appeal pursuant to OCGA § 5-6-34 (a)(11), we hereby deny the Father's motion to dismiss.

Mother filed a motion to modify custody, and the trial order entered an order on February 13, 2024, which denied her motion to modify custody but modified the parenting plan, which included changing the exchange location for non-school days to both parents' houses.

On August 19, 2024, Father filed a motion for both civil and criminal contempt alleging, inter alia, that Mother violated the February 2024 order by moving the non-school day exchange location, and he requested attorney fees.[3]

The trial court held a hearing on June 4, 2025, regarding the Father's motion for contempt, and both parents testified. Father testified that Mother failed to follow the custody exchange procedures in the February 2024 order. Instead, Mother took N. W. to other locations for the exchange. Mother conceded that she refused to conduct the exchange at her house. However, she claimed that she did not act in "willful disobedience" of the February 2024 order, but, instead, she moved the exchange to public locations due to her "very tumultuous relationship" with Father.

---

[3] On May 9, 2025, Mother filed a pro se motion to modify the custody exchange locations, which remains pending.

The trial court found Mother "in willful [civil] contempt for failing to bring the minor child to the proper exchange location as outlined in the parties' temporary order" and awarded Father attorney fees in the amount of $11,378.02.[4]

1. Mother argues that the trial court erred by finding her in civil contempt of the February 2024 order. "The essence of civil contempt ... is willful disobedience of a prior court order. If there is any evidence in the record to support the trial judge's determination that a party has willfully disobeyed a trial court's order, the decision of the trial court will be affirmed on appeal." *Pate v. Pate*, 280 Ga. 796, 798(3) (631 SE2d 103) (2006) (citation omitted).

Mother argues that her violations of the February 2024 order were "motivated by anxiety and panic attacks arising from the prospect of conducting exchanges at private residences, given the parties' history of domestic tension and firearm possession [and] [t]hese safety considerations do not amount to willful defiance[.]" (emphasis omitted). The February 2024 order provided that:

> [t]he pick-up and drop location if school is not in session or during the summer shall change to [the] following: the parent whose parenting time is beginning shall pick up the minor child at the other parent's residence.

---

[4] The trial court denied Father's motion for criminal contempt.

> The parties shall be courteous and remain in their vehicles to allow the minor child to come out to the parent's car. Upon arrival, the parties shall text the other parent they have arrived and are outside waiting.

Evidence was given at the hearing that, after the February 2024 order, Mother would not allow Father to pick up N. W. from her residence. Instead, Mother would drive to another location, and then tell Father to pick up N. W. from there. In one instance, Father arrived to Mother's house to pick up N. W. and sent Mother a text message informing her that he had arrived. However, Mother drove out of her garage with N. W., proceeded to the library, and instructed Father to pick N. W. up there.

While Mother may disagree with the February 2024 order, there was ample evidence to support the trial court's ruling that Mother acted in wilful disobedience of the order by refusing to allow Father to pick up N. W. from her residence. As such, we affirm the trial court's finding of contempt. See *Pate*, 280 Ga. at 798(3) (affirmed trial court's contempt order when there was evidence that husband understated his gross income); *Sullivan v. Harper*, 352 Ga. App. 427, 435(2)(b) (834 SE2d 921) (2019) (evidence supported finding of contempt after mother requested to receive consultation from the child's doctor prior to the release of information to the father because the divorce decree stated that neither parent would interfere with the other

parent's right to receive medical information – even though father received the records the following day).

2. Mother agues that the trial court violated her due process rights by denying her motion for continuance and proceeding with the contempt hearing over her objection. Specifically, Mother contends that "[t]he denial of a continuance ... deprived [her] of her right to a reasonable opportunity to prepare and present her defense, a procedural right guaranteed by both state and federal law." (emphasis omitted). The respondent to a contempt proceeding must have "notice of the charges and the opportunity for a hearing at a specific time and place." *Brown v. King*, 266 Ga. 890, 891(1) (472 SE2d 65) (1996). "To comport with due process, the notice of the hearing must be reasonable." Id.

It appears that an error occurred and electronic notice of the hearing, which was issued in March 2025, was not sent to the parties. However, the trial court found that "the March 25th, 2025 Scheduling Order shows that notice was sent to the mother at her physical address listed on file as of the date of the Order." Mother does not dispute that she received notice of the hearing at her physical address. Moreover, she admits that she knew of the June 4, 2025 hearing by at least May 19, 2025.

6

Accordingly, Mother had notice at least 16 days prior to the contempt hearing. Such notice was sufficient to satisfy due process concerns. See *Randall v. Randall*, 274 Ga. 107, 109(2) (549 SE2d 384) (2001) ("Notice of the hearing shall be served not later than five days before the time specified for the hearing.") (quoting OCGA § 9-11-6(d) (punctuation omitted)); See also *Hedquist v. Hedquist*, 275 Ga. 188, 189 (563 SE2d 854) (2002) ("personally serving a party with a motion for contempt and a rule nisi 17 days before the show cause hearing complies with the notice requirements of due process"). Mother's due process rights were not violated, and the trial court did not abuse its discretion by denying her motion for continuance. See *Pointer v. Roberts*, 288 Ga. 150, 152 (702 SE2d 130) (2010) ("The trial court's discretion in granting or refusing a continuance will not be interfered with by the appellate courts unless it clearly appears that the judge abused his [or her] discretion.") (quotation marks omitted).

3. Mother contends that the trial court "committed reversible error by excluding the affidavit of [her] treating therapist[,]" and refusing her proffer. "A trial court retains broad discretion in determining whether to admit or exclude evidence, and an appellate court generally will not interfere with that discretion absent abuse."

*Landry v. Walsh*, 342 Ga. App. 283, 284(1) (801 SE2d 553) (2017) (quotation marks omitted).

Initially, Mother argues that the trial court "refused to allow [her] to make a proper proffer of [the affidavit's] substance for the appellate record." However, after the Mother introduced the exhibit at the hearing, and opposing counsel objected, the trial court questioned if the affidavit had been previously filed. The Mother conceded that the affidavit had already been filed. Therefore, Mother's argument that the trial court refused her proffer fails.

Further, setting aside whether the trial court erred when it excluded the affidavit, any such error was harmless and presents no grounds for reversal. See *Cook v. State*, 312 Ga. 299, 302(2) (862 SE2d 510) (2021); See OCGA § 24-1-103(a)(2). Mother testified that she suffers from anxiety and post traumatic stress disorder, and that her therapist informed her that the "exchanges heighten [her] anxiety and [her] PTSD."[5] In light of Mother's testimony, it is highly unlikely that her therapist's affidavit would have had any effect on the trial court's finding of contempt. See id. (evidence was cumulative and highly unlikely to have had any effect on the verdict so

---

[5] Her therapist averred that "the current custodial exchange setting exacerbates [Mother's] symptoms and poses an ongoing risk to her emotional well-being."

any possible error in exclusion was harmless); *Chatham v. Gardner Excavating*, 353 Ga. App. 806, 808-09(1) (840 SE2d 46) (2020) (exclusion of evidence at contempt hearing was, at most, harmless error when it was cumulative of other evidence properly before the court).

4. Mother argues that the trial court erred by awarding Father attorney fees pursuant to OCGA § 19-6-2. However, in support of this argument, Mother cites five fictitious cases and two real cases which provide no support for her enumerated error, *Johnson v. Johnson*, 260 Ga. 443 (396 SE2d 234) (1990) and *Cason v. Cason*, 281 Ga. 296 (637 SE2d 716) (2006). Accordingly, she has abandoned this argument. See *Porter v. State*, 364 Ga. App. 465, 467(1) (875 SE2d 486) (2022) (appellant abandoned enumerated error by failing to provide legal citations in support, save one inapposite case); *Nixon v. Barber*, 340 Ga. App. 103, 110(2) (796 SE2d 489) (2017) (appellant abandoned enumerated error by failing to provide citation to legal authority in support).

5. Mother argues that the trial court erred by using the following language in its contempt order: "Pursuant to *Franklin* [*v. Franklin*, 294 Ga. 204 (751 SE2d 411) (2013)] and other applicable Georgia law, in the event of an appeal of this final order

on contempt, the provisions of this order shall constitute a new temporary order (suspending all prior temporary or final relief to the contrary) during the pendency of such appeal and the parties shall be bound by the terms even while an appeal is pending." Mother argues that the trial court's use of the above language "exceeded its jurisdiction and improperly encroached upon the appellate process." However, again, in support of this argument, Mother cites fictitious cases. Specifically, Mother cites three fictitious cases, and one inapposite case, *Hawkins v. State*, 130 Ga. App. 426 (203 SE2d 622) (1973). Accordingly, she has abandoned this argument.[6] See *Porter*, 364 Ga. App. at 467(1); *Nixon*, 340 Ga. App. at 110(2).

6. Finally, Mother argues that the "cumulative procedural and evidentiary errors deprived [her] of a fundamentally fair hearing[.]" (emphasis omitted). However, "pretermitting whether cumulative error applies in civil cases, it applies only to errors in the evidentiary context[.]" *Steusloff v. Finelli*, 377 Ga. App. 154,

---

[6] Of note, the Supreme Court in *Franklin* stated that a temporary order may bind "the parties pending decision and appeal of the final judgment and is enforceable through contempt proceedings pending review of the divorce judgment[.]" Id. at 208(3) (quotation marks omitted).

170(5) n.13 (921 SE2d 760) (2025). As Mother asserted only one evidentiary error, which failed, this claim also fails. Id.

*Judgment affirmed. Brown, C. J., and Rickman, P. J., concur.*