**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J. and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 27, 2024**

# In the Court of Appeals of Georgia

A23A1704. COMBS v. THE STATE.

DOYLE, Presiding Judge.

Following a 2015 jury trial, Josheua Combs was convicted of two counts of theft by conversion.[1] Combs filed a motion for new trial, which he later amended, and the trial court denied the amended motion. Combs now appeals, arguing that (1) the claims against him should have been dismissed because, as a business partner, he could not be guilty as a matter of law for conversion of the partnership's assets; and (2) even if he could legally be guilty of the charges, the charges should have merged at sentencing. For the reasons that follow, we affirm in part and reverse in part.

---

[1] OCGA § 16-8-4 (a). The jury returned a not guilty verdict on a third charge of misdemeanor theft by conversion of $500.

Viewed in the light most favorable to the verdict,[2] the record shows that in November 2013, Joseph and Helen Robinson started a business called "Heavenly Biscuits," which sold homemade biscuits to gas stations and convenience stores in their area.[3] Joseph's son and the son's girlfriend ran the business until early March 2014, when the two abruptly left the state, and the business lost money while under their control. At that time, the Robinsons's house guest of one and a half years, Combs, offered to run the business for them. Prior to that time, Combs had been working construction and power washing jobs. According to Joseph, Combs declined to be paid a wage, but Joseph testified that Combs told the Robinsons that he would like a one-third ownership interest in the operation when it "got big" to which arrangement the Robinsons agreed. Later, when the relationship soured, Combs offered to purchase the operation for $16,000. Joseph also testified that he and Helen did not charge Combs rent or utilities while he had lived with them (although this was

[2] See, e.g., *Clarke v. State*, 317 Ga. App. 471, 471-472 (1) (731 SE2d 100) (2012) ("On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.").

[3] No formal business documentation was presented at the trial.

2

the agreement for the year and a half Combs lived with them prior to working in the business), and they provided him food without expecting reimbursement.

According to Joseph, Combs's duties were to run the business — "[t]o cook, get the biscuits ready and deliver them to the people. And he went around and set up the accounts and everything, you know [h]e was just running the business." The business operated six days a week and was closed only on Saturday night. Another employee, Sally Westbrook, helped out as well, but the Robinsons had no involvement in the day to day business.

The Robinsons provided Combs with a debit card to the business bank account in order to purchase raw material for the biscuits, other necessary supplies, and gas for the business transport van, as well as to pay the $700 rent for the kitchen, $130 for utilities, and to pay Westbrook $200-$240 per week. Joseph testified that Combs was not authorized to purchase alcohol or personal meals with the bank card although there was no formal written confirmation of this rule.

In June 2014, the Robinsons withdrew $5,000 to purchase a van for the business, and gave Combs $2,100 left over from the transaction to purchase a grill and oven for the business. Combs told Joseph that he wanted to wait and save up profit to

add to the $2,100 in order purchase a different oven and grill, but Joseph testified that no oven or grill was purchased, and Combs did not return the $2,100.

Westbrook, who assisted with the business, testified that she worked there for approximately four months (June to September) making $200 per week in cash (Robinson testified at times this was $240 a week). She testified that she and Combs worked every night, and Combs is the one who paid her cash. She testified that before the purchase of the van, Combs originally drove a car to make deliveries, but it was giving him trouble and used a lot of oil. Combs made the biscuits while she made the eggs and bacon; they also cooked ham and sausage, and she testified that the two of them worked continuously until 4:00 a.m., when Combs would make the deliveries. She also testified that Combs would arrive every night with raw materials for cooking the night's biscuits.

The business continued on this way, and the Robinsons did not involve themselves, hearing from Combs that the business was "breaking even" or was making a profit. At the end of September 2014, however, Joseph received calls from some of the customers, who disclosed that Combs was not making deliveries of biscuits they had ordered, and Combs failed to work for four days at the end of the

month. The operation had approximately 7 customers that ordered 20-30 biscuits per day, but after Combs stopped making deliveries, the customers told Joseph they would no longer do business with the operation, even if Joseph replaced Combs. The person from whom the Robinsons were renting space for the operation gave a $230 check to Combs since they were not using the space, and Combs deposited it into the business account and then withdrew $200 the same day. Combs took the work van the next day, and he withdrew another $20 from the account. At that point, Joseph checked the account and found that there was only $10 in the account, so he closed it. Combs was gone with the van for approximately four days, and he did not return with it until Joseph threatened to call the police on him.

After Joseph kicked Combs out of his house, Joseph discovered a number of receipts from the business that were stored in the computer room of his house, and Joseph marked any inappropriate withdrawals or debits on the receipts, which he provided to law enforcement, who investigated the matter. At trial, the investigator on the case testified that they arrived at the numbers for which they indicted Combs based on Joseph's calculations and not on any audit conducted by the police department.

At the close of evidence, the jury found Combs guilty of two of the three counts of conversion. The court sentenced Combs to 15 years' probation, a fine of $1,500, and ordering him to pay restitution to the victims. Combs filed a motion for new trial on October 28, 2015, which he later amended on July 30, 2020. On February 2, 2023, after a hearing on the amended motion for new trial, the trial court denied the motion.

1. Combs argues that insufficient evidence supported the verdicts and that because he was authorized to run the business, and as a partner, he could not be charged with theft by conversion.

Pursuant to OCGA § 16-8-4 (a) (2014),

[a] person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another including, but not limited to, leased or rented personal property, under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation. This Code section applies whether the application or disposition is to be made from the funds or property of another or from the accused's own funds or property in equivalent amount when the agreement contemplates that the accused may deal with the funds or property of another as his own.

6

Nevertheless, it is an affirmative defense to theft by conversion if the defendant establishes that he "[a]cted under an honest claim of right to the property or service involved or under a right to acquire or dispose of it as he did."[4] In other words, "theft by conversion statute requires more than proof of a failure to comply with any contractual obligation. It requires proof of criminal intent — the knowing appropriation of funds or property belonging to another."[5] "The statute cannot properly be employed in the enforcement of civil contract rights[;]" otherwise, we risk violating "the constitutional prohibition against imprisonment for debt[.]"[6]

While Combs argues that he was in a partnership with the Robinsons and therefore could not be guilty of conversion for any decisions he made with partnership funds,[7] we disagree that it was shown as a matter of law that a partnership existed, and it does not appear that Combs argued at trial that additional jury charges should have

---

[4] OCGA § 16-8-10 (2) (2014).

[5] (Citation omitted.) *Connally v. State*, 265 Ga. 563 (1) (458 SE2d 336) (1995).

[6] *Scarber v. State*, 211 Ga. App. 260 (439 SE2d 83) (1993), citing *Smith v. State*, 229 Ga. 727 (194 S.E.2d 82) (1972); *Baker v. State*, 135 Ga. App. 500, 501 (218 S.E.2d 171) (1975).

[7] See *Fox v. State*, 98 Ga. App. 127, 128-129 (2) (105 SE2d 368) (1958).

been given on the issue of partnership.[8] The trial court did, however, properly charge on the affirmative defense of claim of right. That said, even if Combs failed to establish partnership as a matter of law, we must still determine whether sufficient evidence was presented to support the jury's guilty verdicts.[9] Thus,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[10]

(a) With regard to the second count of conversion, the State charged that Combs was guilty of converting $2,100 to purchase an oven for the biscuit operation. Sufficient evidence supports the jury's verdict in the form of Joseph's testimony that

---

[8] Compare id.

[9] See *Terrell v. State*, 275 Ga. App. 501 (621 SE2d 515) (2005).

[10] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

he gave Combs $2,100 specifically to purchase this equipment and that Combs failed to either purchase the equipment or return the money.[11] Accordingly, we affirm the guilty verdict as to Count 2.

(b) With regard to the first count of the indictment, however, there simply is insufficient evidence to support the verdict. Count One charged Combs with theft by conversion of

> a value greater than one thousand five hundred dollars ($1,500.00), under an agreement, to wit: said accused did convert $7,874.04 to his own use, said money having been given to said accused to purchase business equipment and pay billing accounts balances owed by the business with business account funds, either by use of charge cards or cash . . . .

---

[11] See *Connally*, 265 Ga. at 564 (2) (although trustee was authorized to make loans for the benefit of the trust, conviction for conversion of funds was supported by evidence that the defendant loaned himself money and "never formally documented the alleged loans; he concealed his actions from the grantors and beneficiaries of the trusts; he failed to report the loans on his own sworn financial statements; and later, he created promissory notes, backdated them, and altered a cleared check to make it appear that the transactions were loans."); *Terrell*, 275 Ga. App. at 502-503 (holding that sufficient evidence supported the jury's verdict that the defendant converted rather than lost a rented wood chipper based on evidence of invalid phone numbers and an address given by defendant, that plaintiff could not find the wood chipper where the defendant said he lost it, and that the defendant and his wife sold their possessions, moved to Mexico and used assumed names after warrant was taken out for the defendant's arrest).

The testimony and documentary evidence is not sufficient to support the jury's guilty verdict that Combs stole over $7,000 from the business that he was not authorized to use. There was no written contract between the parties, and Joseph testified that Combs was supposed to be in charge of everything. And even if we take as true Joseph's testimony that Combs had no authority to purchase any personal items, take any potential clients to lunch, or pay for his own food or food for the other worker while engaged in business matters, there was not enough evidence presented by Joseph's testimony that over $7,000 was taken for this sort of unauthorized transaction.[12] Joseph had no personal knowledge of how Combs spent any of the cash that was taken as change after valid business purchases or as withdrawals from the

---

[12] Based on the bank statements for the account, less than $600 in charges were obviously unconnected to business matters assuming that Joseph's statements about Combs being prohibited from purchasing personal food items was accepted as true. These transactions included eight transactions at Rooster's restaurant, three transactions at McDonalds, one transaction at Waffle House, one transaction to Wendy's, four transactions at Subway, five transactions at Redbox, two transactions at package stores, and one transaction for Ihop. One receipt from Cavenders Corner gas station evinced a $15.86 charge that is partially obscured but shows that about $9.00 of that total was spent on beer and food. It was not shown whether other charges at Cavenders Corner were for personal food and alcohol or for business related expenses like gas or automotive supplies for the car or van. There are several other charges to similarly named places like "The Corner Store" or "Pierces Corner Store," which have no explanation as to what the location sells or what is alleged was purchased there.

business account. There was no testimony as to how much the business expected to take in for its accounts receivable, nor how much the raw materials, packaging, gas, vehicle upkeep, insurance, or other expenses should have been each month. There was evidence that anywhere from $3,000 to $7,440 was spent paying Westbrook in cash to assist with the business, depending on whether she was paid $200 or $240 per week (there was testimony as to both) and depending on how many weeks she actually worked (it is not clear whether she or anyone else assisted Combs from March to May, but Joseph admitted that Combs could have hired someone because "he was running the business").

Although Joseph testified that Combs was responsible for the $7,000 that he initially invested in the business in November 2013, the bank statements show that at most about $700 was in the account when Combs took over in March 2014. The bank statements between November 2013 and March 2014 showed very little income and almost all of it was withdrawn before Combs took over.[13]

---

[13] These statements also show several personal expenditures such as Dish Network charges.

While we are mindful that intent and credibility are questions for the jury,[14] in this instance it is clear that Combs was engaged in the work of the business throughout the time at issue, and the testimony and evidence presented at trial was not sufficient to foreclose the possibility that the cash withdrawals and many of the debits were made for the business.[15] Although there was some evidence of money taken from the business account for items that the Robinsons believed Combs should not have paid for with business funds, there was not sufficient evidence to support a verdict against Combs for conversion of $7,874.04.[16] Accordingly, we reverse Combs's conviction as to Count 1 of the indictment.

---

[14] See *Connally*, 265 Ga. at 564 (2); *Terrell*, 275 Ga. App. at 503.

[15] Compare, e.g., *Cox v. State*, 275 Ga. App. 895, 895-896 (622 SE2d 11) (2005) (holding that evidence was sufficient to authorize jury to infer that insurance agent defendant fraudulently converted money for his own use when he received the money but failed to set up insurance policy and also abandoned office without updating complainant).

[16] See *Scarber*, 211 Ga. App. at 260-261 (reversing conviction for theft by conversion of consigned furniture because "there was no evidence of what happened to [the complainant's] furniture or her money" and no evidence that the defendant actually sold the furniture or kept money from any sale). Compare *Connally*, 265 Ga. at 564 (2).

2. Combs also argues that the trial court should have merged the two charges at sentencing. Based on our holding in Division 1, however, this enumeration of error is moot.

*Judgment affirmed in part and reversed in part. Gobeil, J., and Senior Judge C. Andrew Fuller concur.*